In the Matter of the Estate of SARA CANE, Deceased.

Surrogate's Court, New York County, August 15, 1927.

**Executors and administrators — discovery proceedings — gift of bonds inter vivos shown.**

The respondent in the present proceedings to discover property of the decedent has sustained the burden of proof to show that certain bonds delivered to the respondent several years before the death of the decedent were given to him by the decedent.

DISCOVERY proceeding to secure possession of certain bonds.

*David M. Neuberger,* for the petitioner.

*Schreiber, Collins, Myers & Buchter* [*Benjamin F. Schreiber* and *John F. Keating* of counsel], for the respondent.

O'BRIEN, S. In this discovery proceeding, brought to secure possession of *twelve* bonds for decedent's estate, an issue arose over the title to *ten* certain bonds which respondent admits that he had possessed and to which he claimed to have had the title by reason

of a gift made to him *in 1921* by decedent. This issue was tried without a jury which trial extended through several prolonged sessions. The rancor and ill-will, bitterness and uncompromising hostility within the family circle so characteristic of a great many of the controversies which are daily heard in this court were clearly and candidly displayed in this trial. This fact is mentioned because it is in the light of this atmosphere and this attitude upon the part of those witnesses who are of the family of decedent that the evidence must be analyzed and weighed and decision rendered. Decedent lived with her four bachelor brothers for many years in No. 4 West One Hundred and Fifth street. She kept house for them, receiving from them the funds with which to run the household. *She continued to live with them down to the date of her tragic death.* One of her brothers purchased an automobile and frequently took her to ride in it. Out of the allowances made to her for the upkeep of the home, she saved enough money to buy bonds of the *value of $10,000,* title to which is at issue here, and other bonds which when she died she left with a note giving them to her brother William, since deceased. Around the corner of One Hundred and Fifth street at No. 485 Central Park West lived decedent's sister, Amelia Rosenfeld, and her husband, Samuel Rosenfeld. The latter is the respondent herein. *Decedent died on January 9, 1925.* Respondent contended in his answer and upon the trial that decedent had given the ten bonds to him *in 1921* with the understanding that he was to pay her the interest upon them while she lived. All of the testimony directly concerning the alleged gift was given by the respondent, Samuel Rosenfeld, his wife Amelia, decedent's sister, Carrie Morganthau, niece of decedent, and Gertrude (Rosenfeld) Medicus, niece of decedent, her husband, Philip Medicus, and the latter's father and mother, Jacob and Lillian Medicus respectively and a witness unrelated to decedent's family but a neighbor of the respondent and wife of a lawyer who acted at least in a small way for Rosenfeld, the respondent. The testimony of respondent and his wife covered the occasion and the fact of the gift in 1921. The testimony of four of the other above witnesses brought out statements made to them or in their presence that she had made the gift to respondent, and that he was to pay her the interest. The testimony of decedent's niece, Carrie Morganthau, brought out the appreciative feeling of decedent for Rosenfeld for his kindness to her. Of the rest of the family circle there appeared as witnesses Solomon and Morris Cane, brothers of decedent, who supported the petition. The other witnesses were three representatives of banks, a representative of a brokerage house, a handwriting expert and an attorney, Raymond Knoeppel,

who had written respondent concerning bonds of decedent's estate after her death. Through the witness Fullerton, representing the Colonial Bank, petitioner showed that decedent had made many deposits of *Liberty bond coupons* in the period from 1921 (the time when the gift was alleged to have been made) to 1925, when she died, from which petitioner seeks to draw the conclusion (1) that these were the same Liberty bonds which respondent claims were given him, and (2) that she had never parted with the coupons of the Liberty bonds. These deductions, however, are to an extent speculative since the testimony and exhibits did not identify the bonds from which said coupons were cut, and again, the mere deposit of the coupons by decedent does not prove that she always held possession of them. With all of the insinuations, assertions and contradictions made in the trial by the witnesses who were of decedent's family circle, it would be extremely difficult to say where the truth lay with respect to the particular matters involved in the contradictions, but out of the tangle presented by the testimony and the bitterness openly manifested, certain salient facts stand out, compasslike, to lead the court out of the fog, viz.: (1) That decedent had a strong friendship for her brother-in-law, respondent; (2) that she had given him access to her safe deposit box from April 6, 1924; (3) that respondent was not seen at the safe deposit box after decedent's death; (4) that respondent had possession of these bonds from 1921. When all the record, the testimony, the exhibits and the pleadings are boiled down, it is found that with the exception of claimed weaknesses, prejudices, likes, dislikes and hatreds on the part of respondent's witnesses, petitioner presents little evidence to disprove the fact of the gift beyond the testimony of decedent's brothers, Solomon and Morris, as to statements made by respondent's wife on the occasion of their respective visits to respondent's home threatening to break her husband's neck if he did not give back " those bonds to Sara " and the testimony and exhibits showing that decedent had deposited Liberty bond coupons in her bank in the years following 1921. This testimony is not necessarily inconsistent with the theory of a gift to respondent. After hearing the witnesses at the trial and carefully weighing the proofs offered on both sides, after making due allowances for the deep feelings of hostility manifested upon both sides of this controversy, after a close study of the scholarly briefs presented by the learned counsel for petitioner and respondent, I have reached the conclusion that respondent has sustained the burden of proof which rested upon him, claiming a gift of the bonds, that they were given to him in 1921 by decedent and were and are his property. Submit order on Tuesday, August 16, 1927.