## In the Matter of the Estate of ALBERT SOUTHARD, Deceased.

Surrogate's Court, Nassau County, January 22, 1934.

*James W. Andrews* [*Leroy G. Edwards* of counsel], for the petitioner.

*James N. Gehrig,* for the respondent.

HOWELL, S. This is a discovery proceeding instituted by the administrator of the decedent, Albert Southard, against Sarah Van Ausdall, respondent. Its purpose is to require certain moneys, claimed to have been the decedent's property at the time of his death and to be now in the respondent's possession, to be restored

to the estate. The answer of the respondent denied the allegations of the petition and asserted that the decedent had, in his lifetime, transferred those moneys to the respondent.

From the testimony adduced, it appears that the decedent died September 5, 1933, at the age of about seventy-seven years; that at the time of his death he was living with the respondent, who was about the same age; that he had lived with her as boarder and lodger for at least fourteen years, both before and after her husband's death; that he looked after the house and premises generally and waited upon the respondent when she was ill; and that the respondent, reciprocally, took care of the decedent and tended him when he was ill. In brief, the picture is presented of two aged people living in the same house, nominally as landlady and lodger or boarder, but in a friendly and mutually helpful relationship, and apparently with great esteem each for the other.

Such was the situation in the summer of 1932 when the decedent was suffering from a fatal illness which resulted in his death. The respondent, though herself aged and lame, cared for him, assisted at times by her daughter, Mrs. Nicholay. He had a bank account of about $4,300 in the Oyster Bay Trust Company. About the first of July he caused this to be placed in a joint account in the names of himself and the respondent, payable to either or to the survivor. By this act a presumption arose of the creation of a true joint tenancy, rebuttable during the joint lives of the decedent and the respondent, but becoming irrebuttable and conclusive upon the death of either. (Banking Law, § 249, subd. 3; *Moskowitz* v. *Marrow*, 251 N. Y. 380.)

Hence, had the account remained in the form in which it was made until the decedent's death, the balance then in the account would unquestionably have become the property of the respondent.

However, it did not so remain. About the end of July the respondent drew $500 from the account, and then, at decedent's request and by his direction, the balance of the account was transferred to the respondent and placed in a checking account. The reason for changing from a special deposit account to a checking account was the inconvenience or inability of respondent to get to the bank to make withdrawals. One legal result of this withdrawal and change was that, as to the moneys thus withdrawn by respondent from the joint account, the presumption of intent to create a true joint tenancy remained rebuttable. (*Moskowitz* v. *Marrow, supra.*)

I cannot find, however, that the presumption has been rebutted. On the contrary, I am satisfied, from the proof, that the decedent intended to, and did, make a gift and transfer of these moneys

to the respondent. By the creation of the joint tenancy a presumption arose of his intent that the respondent should have the right to draw upon that account during his lifetime, and that the balance thereof, if any, should belong to her upon his death; and the evidence in the case, instead of rebutting that presumption, the more clearly proves that intention. Had the money not been withdrawn by the respondent during the decedent's lifetime, it would have been hers at his death. Surely it cannot be said that the situation was completely reversed by reason of the change of the form of the account and its transfer to respondent's name at decedent's direction under the circumstances shown.

To be sure, the proof supporting these conclusions consists largely of the testimony of the respondent's daughter, Mrs. Nicholay. Such testimony is subject to careful scrutiny. Death has sealed the lips of the decedent; the statute has sealed those of the respondent. (Civ. Prac. Act, § 347.) The fact that here a claim is being asserted against the estate of a dead man to the effect that he made a gift to the claimant during his lifetime, does not require that claim to be established by any different kind and quality of evidence than would be sufficient if the transaction were alleged to have occurred with a living person. Where proof adduced in support of such a claim consists largely of oral testimony given by relatives of the claimant, there is no rule of law requiring such testimony to be corroborated in all substantial particulars by the testimony of disinterested witnesses in order to sustain the claim. That theory, for which support is sometimes supposed to be found in such authorities as *Rousseau* v. *Rouss* (180 N. Y. 116); *Hamlin* v. *Stevens* (177 id. 39); *Wallace* v. *Wallace* (216 id. 28) and other similar cases, is not the law. The rule is the same as in any civil case, *i. e.*, that the plaintiff must establish his claim by a fair preponderance of the evidence; and the rule as to the weight and quality of evidence is the same whether the claim be asserted against a decedent or a living person.

But where the claim is asserted against the estate of a decedent, the trial court should not forget that death has sealed his lips, that the testimony of interested witnesses should be scrutinized carefully and critically, and should not be made the basis of a favorable determination unless clear and convincing. These, however, are but counsels of caution for the guidance of the conscience of the triers of the fact. The responsibility of determining that such evidence is clear and convincing, and sustains the claim asserted, rests upon them. (*McKeon* v. *Van Slyck*, 223 N. Y. 392; *Ward* v. *New York Life Ins. Co.*, 225 id. 314; *Matter of Sherman*, 227 id. 350.)

The principles thus so clearly stated and restated by the Court of Appeals have since been applied consistently by the Surrogate's Courts. (*Matter of Cane*, 130 Misc. 333; *Matter of Sullivan*, 133 id. 758; *Matter of Caraher*, 138 id. 10; *Matter of Brown*, 130 id. 865; *Matter of Hall*, 144 id. 616; *Matter of Ehlers*, 132 id. 910.)

Having those principles in mind, I have considered the testimony of Mrs. Nicholay accordingly. To me it is clear and convincing, and is supported by the other evidence and circumstances in the case.

The petition is, therefore, dismissed.