15859

DAVIS v. QUERY *ET AL.*

(39 S. E. (2d), 117)

*Messrs. Wyche, Burgess & Wofford,* of Greenville, for Petitioner,

*Messrs. John M. Daniel,* Attorney General, and *M. J. Hough, T. C. Callison, Calude K. Wingate,* Assistants, for Respondents,

July 26, 1946.

MR. ASSOCIATE JUSTICE STUKES delivered the Opinion of the Court and MR. ASSOCIATE JUSTICE TAYLOR dissented.

This proceeding in the original jurisdiction, by permission of the court, was brought by petitioner, a licensed retail liquor dealer under The Alcoholic Beverage Control Act of 1945, for injunction against the South Carolina Tax Commission, its officers and agents, from enforcement of certain recently promulgated rules and regulations affecting that traffic.

The case was placed upon the roster for the June term upon a rule to show cause, duly issued, why the respondents should not be temporarily restrained in the manner sought, pending hearing of the controversy upon the merits. The commission made return which was printed along with the petition and both contestants were ably represented by counsel at the oral arguments, after the filing of printed briefs, and they then agreed that the matter be heard and considered on the merits, which course is followed.

The petition concerns itself with a description of the large retail business in the sale of intoxicants which petitioner has built up in the city of Greenville over a period of years and the resulting "overhead" expenses. The third paragraph of the petition is quoted, as follows:

"That the said respondents, acting as the South Carolina Tax Commission, have been given under the law the powers and duties to pass reasonable regulations to regulate the manufacture, sale, possession, transportation and use of alcoholic liquors; the power to grant, suspend and revoke licenses engaged in the manufacture, handling and the sale of alcoholic liquors; to collect the license tax and to prohibit violations of the law with reference to the manufacture, sale, possession and transportation of alcoholic liquors. That pursuant to such authority and power the said Tax Commission from time to time have made such reasonable regulations not inconsistent with the Act regulating the manufacture, sale, possession and transportation of alcoholic liquors for the purpose of carrying out the provision of the said Act and to prevent the illegal manufacture, bottling, sale, distribution and transportation of alcoholic liquors."

Thereafter the petition contains full copies of three regulations of the Commission which were promulgated on April 18, 1946, effective May 1, 1946, which petitioner alleges are in excess of the statutory authority of the Commission and on the contrary are unreasonable, capricious, unlawful and in restraint of trade, and the contention is

made that "equitable distribution" of alcoholic liquors does not contemplate, in the title or body of the Act under review, equitable distribution among the counties, between wholesalers and retailers; and that the act is devoid of a standard whereby equitable distribution shall be measured; and the contention is repeated with respect to the so-called rationing of whiskey to individuals; and that under the regulations petitioner would be unable to continue to purchase liquors in such quantities as to conduct his usual business.

The return of the Commission asserts the reasonableness of the regulations to bring about an equitable distribution of alcoholic liquors in the state and that the very fact of the size of petitioner's business, in comparison with others in the County of Greenville, convinced the members of the necessity of the regulations in order to carry out the legislative mandate to effect an equitable distribution; and there is a denial that the Commission has exceeded its authority, derived from the legislature, in the promulgation and enforcement of the regulations, which are alleged to be reasonable and proper. The return then contains the following:

"The petitioner may not be able to purchase from the wholesalers the large quantities of liquor which he has heretofore purchased, but will be required to accept his proportionate share of such liquors as are available, and permit the other retail dealers within the State to secure a fair portion of the available liquors, and thus an equitable distribution of available liquors in this State will be effected. Respondents deny that all of the seven hundred retail stores in this State will be adversely affected by the enforcement of the regulations hereinabove referred to, and allege that such retail dealers within the State who have in the past been unable to procure a fair allotment of such alcoholic liquors will no longer be discriminated against in favor of the few who have by some means been able to procure a larger proportion of such liquors than they were equitably entitled to receive. The respondents admit that the regulations complained of are in full force and effect, but deny that any

emergency exists except such emergency as may have been occasioned by the scarcity of alcoholic beverages and the lack of sufficient quantities of same to meet the consumer demand within the State."

The pleadings have not been fully stated, but the salient points have been set forth sufficiently to understand the questions presented, which respondents accurately say are as follows:

(1) Is the title to the Act of 1945 sufficiently broad to cover the subject dealt with in the body of the Act?

(2) Does the Alcoholic Beverage Control Act of 1945, considering the title together with the contents of the Act, authorize the South Carolina Tax Commission to adopt the regulations set out in the petition?

(3) If the Act authorizes the adoption of such regulations does such authorization amount to a delegation of legislative authority to the South Carolina Tax Commission?

(4) If the Legislature, under the Constitution, may direct the Tax Commission to adopt reasonable regulations for the purpose of effecting an equitable distribution of alcoholic liquors in the State, are the regulations so adopted reasonable and equitable?

However, the questions will not be dealt with in the order thus stated in the brief of respondents, or even separately, but they will be completely disposed of by full consideration of all of the points urged in petitioner's written and oral arguments. Without stating them specifically, petitioner touches on respondent's questions in his brief, but the gravamen of his position is that the attempt of the legislature to vest the tax commission with authority to adopt and enforce rules and regulations which will effect an equitable distribution of intoxicating liquors in the state is unconstitutional for its failure to observe the traditional separation of governmental powers, and he cites article III, sec. 1, of the Constitution of 1895, wherein the legislative

power of the state is vested in the General Assembly; and he contends that the Act of 1945, in the aspect under review, is an unconstitutional attempt by the General Assembly to delegate its legislative power.

This is a perplexing question of constitutional law which has given the courts no end of trouble, particularly during recent years when the complexities of government appear to constantly increase. The subject is excellently and exhaustively treated in an annotation in 79 L. Ed., 474, appended to report of the case of *Panama Refining Co. v. Ryan,* 293 U. S., 388, 55 S. Ct., 241, 79 L. Ed., 446. In that case the Supreme Court found invalid an executive order which it held to be in the nature of legislation and its attempted authorization, by the National Industrial Recovery Act of Congress, unconstitutional. The opinion of the court was by Chief Justice Hughes and Justice Cardoza filed an interesting dissenting opinion. The order attempted to prohibit the shipment in interstate commerce of "hot" oil, that produced or withdrawn from storage in violation of state laws or regulations, and a point of the decision is that the statute under which the order was promulgated did not declare a policy of prohibition of such commerce, indeed it contained a declaration of policy against the obstruction of the free flow of commerce; but the *ratio decidendi* is well summarized in the judgment, as follows: "Congress left the matter to the President without standard or rule, to be dealt with as he pleased". The leading opinion is an extensive one and in it there were reviewed many of the former decisions of that court in which orders and regulations of executive officers and boards were upheld when they accorded with a policy formerly declared by Congress and accompanied by a standard in the authorizing acts. There is no need to attempt another review of the decisions here but digests of two of them will be reproduced from the opinion for they closely approach our present problem.

In *Buttfield v. Stranahan,* 192 U. S., 470, 496, 48 L. Ed., 525, 535, 24 S. Ct., 349, the Act of March 2, 1897 (29

Stat. at L., 604, 605, chap. 358, U. S. C., Title 21, Sec. 41) was upheld, which authorized the Secretary of the Treasury, upon the recommendation of a board of experts, to "establish uniform standards of purity, quality, and fitness for the consumption of all kinds of teas imported into the United States". The Court construed the statute as expressing "the purpose to exclude the lowest grades of tea, whether demonstrably of inferior purity, or unfit for consumption, or presumably so because of their inferior quality". The Congress, the Court said, thus fixed "a primary standard" and committed to the Secretary of the Treasury "the mere executive duty to effectuate the legislative policy declared in the statute".

The provisions of the Radio Act of (February 23), 1927 (44 Stat. at L., 1162, 1163, chap. 169, U. S. C., title 47, Sec. 81), providing for assignments of frequencies or wave lengths to various stations, afford another instance. In granting licenses, the Radio Commission is required to act "as public convenience, interest, or necessity requires". In construing this provision, the Court found that the statute itself declared the policy as to "equality of radio broadcasting service, both of transmission and of reception", and that it conferred authority to make allocations and assignments in order to secure, according to stated *criteria,* an equitable adjustment in the distribution of facilities. The standard setup was not so indefinite "as to confer an unlimited power". *Federal Radio Commission v. Nelson Bros. Bond & Mortg. Co.,* 289 U. S., 266, 279, 285, 77 L. Ed., 1166, 1175, 1178, 53 S. Ct. 627, 89 A. L. R., 406.

It is important to note that the recent *Ryan case, supra,* and *Schechter v. United States,* 295 U. S., 495, 55 S. Ct., 837, 79 L. E., ...., 97 A. L. R., 947, which also related to the National Industry Recovery Act, were the first cases in which the Supreme Court ever actually decided that any particular act of Congress was unconstitutional as delegating legislative powers. The cases of *Ryan* and *Schechter* are easily differentiated from the instant case, for here the legis-

lature has declared its policy that there shall be an equitable distribution of liquor and has expressly and pointedly empowered the Tax Commission to put such policy into practice by rules and regulations which it shall devise. The standard enjoined is "equitable distribution" and it is not confined to distribution among the counties, distribution among the dealers or distribution among the public, and the commission has logically undertaken to frame its rules and regulations to the ends that there shall be an equitable distribution among counties, among dealers and among consumers. The regulations here assailed are, we think reasonably calculated to accomplish an equitable distribution and thereby carry out the expressly declared policy of the legislature. The adoption and enforcement of them is not legislation on the part of the commission for the law declaring the policy and setting up the standard to be followed was the Act of the General Assembly of 1945. It has legislated, not the commission.

The practical side of the problem is very apparent. The General Assembly meets once a year, the commission constantly. Equitable distribution may require one rule of conduct by the liquor dealers one month and another the next. Hence the situation requires a flexibility of control which is not possible under the rigidity of legislative acts. Such is illustrated in the record before us; the regulations have already been amended by the commission after less than two months of life by the removal from them of certain brands of liquor which have become more plentiful.

Reverting to the annotation in 79 Law Ed., it is stated at page 479 that there is no fixed formula for determining the powers which must be exercised by the legislature itself and those which may be delegated to an administrative agency; it is vague and fluctuating, and often difficult to define or discern. We quote from pages 489, 490:

"A legislative body may, after declaring a policy and fixing a primary standard, confer upon executive or adminis-

trative officers the 'power to fill up the details' by prescribing administrative rules and regulations to promote the purpose and spirit of the legislation and to carry it into effect; and the action of the legislature in giving such rules and regulations the force and effect of laws does not violate the constitutional inhibition against delegating the legislative function."

Among the supporting state and Federal cases cited in the footnotes to the foregoing is *Santee Mills v. Query,* 122 S. C., 158, 115 S. E., 202. From the opinion in the latter, by Mr. Justice Marion, the following is taken:

"The contention that duties and powers conferred by the Act upon the State Tax Commission amount to an unconstitutional delegation of legislative power is also untenable. The State Tax Commission has no power delegated to make any rules or regulations inconsistent with the law enacted or for any other purpose than to carry out the legislative will expressed in statutory form. It is elementary that, while the Legislature may not delegate its power to make laws, it may vest in administrative officers and bodies a large measure of discretionary authority, especially to make rules and regulations relating to the enforcement of the law. 12 C. J., 844; *Port Royal Min. Co. v. Hagood,* 30 S. C., 519, 9 S. E., 686, 3 L. R. A., 841; *Michigan Cent. R. Co. v. Powers,* 201 U. S., 245, 26 Sup. Ct., 459, 50 L. Ed., 744; *Leser v. Lowenstein,* 129 Md., 244, 98 Atl., 712."

There are other interesting decisions from this court upon the subject and none recent has been brought to our attention in which the delegation of rule-making power to an administrative agency or a rule itself has been held invalid except *State v. Wells,* 191 S. C., 468, 5 S. E. (2d), 181. Our last adjudication upon the point is *Banks v. Batesburg Hauling Co.,* 202 S. C., 273, 24 S. E. (2d), 496, in which the questioned rule was held valid and the legislative authorization therefor not an unconstitutional delegation of legislative power. These cases arose under our Workmen's Com-

pensation Act which provides: "The Commission may make rules not inconsistent with this article, for carrying out the provisions thereof". Sec. 7035-57, Code of 1942. And extensive rules are published in the code, promulgated pursuant to the quoted statutory authorization. The *Wells case, supra,* is not contrary to the trend of the authorities generally or of our decisions for it involved a commission rule which purported to permit the practice of law by laymen before its hearing commissioners, in rather plain violation of the established law upon that subject. Many executive officers and agencies have from time to time been vested with rule-making powers by our General Assembly. Some of them are noted by reference to decisions collected in 7 S. E. D., Constitutional Law, Key 62.

The frequency with which our General Assembly has delegated to administrative agencies of the state government power and authority to promulgate rules and regulations, incident to the application and enforcement of various statutes, finally resulted at the legislative session of 1937 in an act which undertook to standardize the procedure and require the publication of such rules and regulations for the benefit and protection of the public.

The law is now codified in the Code of 1942, section 2118-3. It is of comprehensive provisions, containing three sub-sections, and provides that the departmental rules and regulations shall become effective only after the proper certification by the adopting officer or agency and filing in the office of the Secretary of State, where they shall be open for public inspection; at the same time certified copies must be furnished to the code commissioner who shall publish them annually in the acts of each regular session of the General Assembly and include them in the index with references to the respective empowering sections of the code or uncodified statutes; and when a new code is published, it shall contain a compilation of all such administrative rules and regulations in effect at the time of the printing of the code.

Reference to the original enactment of the statute (40 Stat., 174), is enlightening for the act contained a preamble which recited that in the Code of 1932 and subsequent laws there were numerous provisions which authorized various officers and agencies of the state to adopt rules and regulations to effectively enforce certain laws, which have the effect of legislative enactments, without prior provision for filing and publication which should be provided so that they will be just as available to the public as ordinary acts of the General Assembly.

■ The long-standing procedure of the General Assembly in authorizing officers and agencies of the state to promulgate rules and regulations having the effect of law has been referred to at length in order to conclusively show that The Alcoholic Beverage Control Act of 1945 was not at all a departure from former practice, in its provisions with respect to the rule-making power of the Tax Commission. Petitioner recognizes this and admitted in his brief before us, quoting: "There is no doubt that the South Carolina Tax Commission has the legal authority to pass such regulations as may be necessary to carry out the provisions of the Act. * * *" But he thereafter immediately contends that the commission "has no legal authority to enact new laws in the nature of regulations to satisfy its own theory as to how such matters should be controlled". Therein lies the heart of the controversy. For full understanding of it, the statute and the contested regulations will now be examined in some detail.

The title of the act in question is here set forth: "An Act To Enlarge The Powers And Duties Of The South Carolina Tax Commission And To Increase The Number Of Commissioners; To Regulate The Manufacture, Sale, Possession, Transportation, And Use Of Alcoholic Liquors; To Provide For Granting, Suspending And Revoking Licenses For The Manufacture, Handling And Sale Of Alcoholic Liquors; To Provide For The Collection And Allocation Of The License Tax On Alcoholic Liquors, And Additional Taxes

And Licenses; To Provide For The Administration And Enforcement Of This Act, And The Cost Thereof; To Prohibit Violations Of This Act And To Provide Penalties Therefor; And To Make Additional Appropriations For The Enforcement Thereof".

In the first section the law is given its name,—"The Alcoholic Beverage Control Act of 1945"; and other provisions also indicate the legislative intention to make it all-inclusive upon the subject. The South Carolina Tax Commission was made the administrative enforcement agency and it was expressly vested with, quoting: "The functions, duties and powers set forth" in the Act. The Commission was numerically increased in membership for the purpose, with authority to it to appoint a full-time attorney, eight inspectors with salaries fixed by the commission and similarly with respect to clerical, stenographic and other personnel. The Commission was given, quoting, "sole and exclusive power and authority to grant, issue, suspend and revoke all licenses" for the manufacture and sale of intoxicating liquors at wholesale or retail, in connection with which, and with the power of revocation of licenses, the Commission may hold hearings, subpoena, swear and examine witnesses, and further delegate such authority and power to its various members, officers and agents, with court review only upon *certiorari*. With reference to the issuance of licenses, which shall be to persons suitable in the judgment of the Commission and in a business location acceptable, with power to limit the number of licenses; and with reference to the collection of license fees and other taxes the act contains the following as section 10 (g) : "The Tax Commission may from time to time make such reasonable rules and regulations, not inconsistent with this Act or with the general laws of the State, as the Tax Commission shall deem necessary to carry out and enforce the provisions of Section 8 and 10 of this Act and any other provisions relating to the levy, assessment, collection and payment of the license taxes provided in said Sections, and to prevent the evasion of the said provisions and the

failure or refusal of any person subject thereto to pay such taxes. Such regulations shall be filed and published as provided for in Section 2118-3, Code of Laws of South Carolina, 1942, and shall have the force and effect of law as provided in said Section".

Similarly as a separate section, No. 12, there is the following:

"The Commission may from time to time make such reasonable regulations, not inconsistent with this Act or with the general laws of the State, and the Commission shall deem necessary to carry out the purposes and provisions of this. Act, and to prevent the illegal manufacture, bottling, sale, distribution and transportation of alcoholic liquors, or any one or more of such illegal acts, and from time to time alter, repeal or amend such regulations or any of them. Such regulations shall be filed and published as provided for in Section 2118-3, Code of Laws of South Carolina, 1942, and shall have the force and effect of law as provided in said Section. The Commission is authorized and directed to give additional notice thereof to all licensees in such manner as it may deem proper. The wilful violation of any rule or regulations made under the provisions of this subsection and having the force and effect of law shall constitute a violation of this Act."

The foregoing are a few high lights of the statute but are enough to show the almost unlimited extent of authority which was given the Tax Commission for the purpose of the administration and enforcement of the liquor laws of the state. In addition to the quoted provisions which authorize the commission, in its discretion, to make pertinent rules and regulations which shall have the force and effect of law, there is included the following which is a part of section 4:

"The Tax Commission is hereby authorized and directed to adopt such regulations as it may deem necessary and proper to effect an equitable distribution of alcoholic liquors in this State."

It is conceded that at the time of the passage of the Act of 1945, and now, there is a scarcity of intoxicating liquors and general unrest in the trade and among consumers arising from the unequal distribution, particularly of the better brands, to the various retail outlets. It is common knowledge that many retail dealers complain and the consuming public complain. It is perfectly apparent that the General Assembly undertook to remedy this undesirable situation and we think that the provision, though brief, encompassed the evident purpose to vest the Commission with the right and duty to promulgate rules which the commission calculate are proper and necessary to effect a fair and equal distribution, both to retail dealers and to the consumers of the state.

■ Recurring to the grounds of attack upon the rules for unreasonableness, we consider them in thel ight of the admitted allegations in the petition and the further statements of fact contained in the return. There was no traverse of the latter, so its contents must be taken as true. The percentage distribution which is required of wholesalers to the various retailers in the several counties is fixed in a formula which was arrived at by the commission by giving equal weight to the normal purchase record of each county and its present population. Under it petitioner's county of Greenville is given 7.1 per centum of the aggregate supply. Only Charleston County with 11.2 per centum and Richland County with 9.8 per centum exceed Greenville. Smaller counties range downward to .4 per centum. This scheme bespeaks its fairness.

The regulation contains qualifications to the effect that distribution among the counties must be by brands and in the event that there are not enough cases of any particular brand to go around the counties, each must receive one, beginning alphabetically, before any other receives more than one. And within the counties each retailer must receive his equitable share so that none will receive more than two cases until every other has received one; none more than four until every other two, etc. And there is a provision for

alphabetical distribution of one case each of a brand until all are supplied, with provision that no dealer shall receive two cases of a county's allocation of a particular brand until every other has received one, none four until all have received two, etc.

Lower grades of liquor are excluded from this plan of distribution and traffic in them is apparently controlled only by supply and demand. The regulation is subject to the further qualification that upon receipt of evidence by the Commission that certain brands and types of whiskies are available in quantities exceeding the demand, they may be removed from the "program" and some have been so removed during the short time since the inception of the regulation.

We repeat that unreasonableness in the regulation has not been shown. Petitioner's argument is to the effect that by his efficiency he has built up a larger business than his competitors which entitles him to the right to purchase whiskey in accord with the needs of the business which he has created by his enterprise. He overlooks the fundamental fact that he is not engaged in an ordinary business and has no vested right to operate, despite his license, in any manner other than that dictated by the state; his is a perilous business; there is probably no field in which legislative bodies, and the people themselves in referenda, have been more fickle. In the return it is stated that five Greenville liquor dealers, including the petitioner, obtained from wholesalers during the six months' period ending February, 1946, more than one thousand cases each of alcoholic liquors, whereas each of thirty-four other retail dealers in Greenville County obtained only from one-tenth to one-half such amount, which the Commission deemed an inequitable distribution and it seems to us to prove itself so.

Another of the regulations attacked is that forbidding any retailer from selling more than two bottles of high-grade whiskies to any individual in one day; or over a half case of the cheaper brands; or over a case of *any* alcoholic liquors.

The two latter regulations apply to liquors not included in those limited to sales of not over two bottles per day.

Petitioner's complaint against the last mentioned regulation is rather inconsistent with his complaint of the first. With respect to the latter he contends that his purchases are limited and with respect to the former that his sales are limited. Perhaps a member of the public would be in better position to contest the limited right to purchase at retail. Certainly, so far as petitioner is concerned, we are convinced that the regulation is fairly connected with equitable distribution among individuals and is a reasonable requirement of retailers in the commission's effort to comply with the injunction of the General Assembly to "effect an equitable distribution of alcoholic liquor in this state".

■ The final regulation which petitioner would enjoin is that alcoholic liquors in excess of one case shall not be transported in any vehicle save a licensed common carrier, or one owned and operated by a licensed wholesale liquor dealer. However, petitioner has failed to point out any probable injury to him by reason of the enforcement of this rule and we give it no further consideration.

■ If it were necessary to base the validity of the disputed regulations upon their particular subject matter, there is ample authority. From the beginning almost of legislative government intoxicating liquor has been a peculiar problem upon which (and traffic in it) the police power operates with less restraint than upon other commodities. In no case in this court has the field been more fully explored than in the historic decision of *State v. Aiken*, 42 S. C., 222, 20 S. E., 221, in which the then State Dispensary Law (for the distribution of intoxicants) was upheld from constitutional attack. Many state and federal decisions were reviewed to demonstrate that whiskey and governmental attempts at control of its sale and consumption have been well-nigh universally held to be within the police power, in everlasting public effort to protect the health, morals and safety of the

people, to all of which the intemperate use of liquor is concededly, gravely dangerous. Extensive texts have been devoted to the subject. For modern discussions of it, see 33 C. J., 499, 505 *et seq.,* and 30 Am. Jur., 254, 260, 261.

Reference to the Dispensary Act of 1893 (21 Stat., 430), unsuccesfully attacked for alleged unconstitutionality in the *Aiken case,* just cited, discloses the following title: "An Act To Declare The Law in Reference to, and Further Regulate the Use, Sale, Consumption, Transportation and Disposition of, Alcoholic Liquids or Liquors Within the State of South Carolina, and to Police the Same". Section 6 contains the following: "Said County Boards shall make such rules as will be conducive to the best management of the sale of intoxicating liquors in their respective counties: Provided, All such rules shall be submitted to the State Board and approved by them before adoption". The executive head of the dispensary system established by the act was called the Commissioner. In section 3 it was provided that: "All rules and regulations governing the said Commissioner in the purchase of intoxicating liquors, or in the performance of any of the duties of his office, where the same are not provided for by law, shall be prescribed by the State Board of Control".

Striking similarity is seen between the rule-making powers of the State and County Board of Control in this Dispensary Act of 1893 and the corresponding power to make rules upon the same general subject vested in the Tax Commission by the Act of 1945. Other important discretionary powers were delegated to the State Board. The assault upon the Act of 1893, involved in the *State v. Aiken case,* was a broadside one, with numerous constitutional points put forward, but not that the legislative authorization to the Dispensary Boards to make pertinent rules for the conduct of the business was an illegal delegation of legislative power, the principal point here urged. The practice apparently went unchallenged over a half century ago. Indeed, the court, in the *Aiken case,* approvingly mentioned this feature of the leg-

islation when it said at 42 S. C., 241: "The sales are to be made under rules adopted by the county board of control, and approved by the State board of control. It is certainly possible for the objects of the Act to be carried into effect under proper rules adopted for that purpose."

A recent decision from another jurisdiction involving administrative regulations relating to the liquor traffic is *Silberglied v. Mulrooney et al.*, 150 Misc., 251, 270 N. Y. Sup., 290, where there was held valid a regulation of the New York State Alcoholic Beverage Control Board limiting liquor stores for the sale of intoxicants for off-premises consumption in proximity to each other to fifteen hundred feet in certain cities. The opinion is an unusually able and comprehensive one and it is with regret that, to avoid undue prolongation, we refrain from quoting from it.

■ The foregoing discussion has disposed of all questions adversely to petitioner save the alleged inadequacy of the title of the Act of 1945, which must likewise be overruled. Invoked is the state constitutional (Art. 3, sec. 17) provision that an act shall relate to but one subject, which shall be expressed in the title. The title of the act before us has already been set forth in full. A mere reading of it clearly demonstrates its sufficiency. It need not be a catalog of the contents, or even an index. Our decided cases are uniform that the requirement is for protection against concealed contents. We quote one authority; many others may be found in 30 S. E. D., 778, 779, Statutes, key 109. The following is from the opinion in *Lillard v. Melton*, 103 S. C., 10, 87 S. E., 421:

"When the general subject is expressed in the title, any details of legislation which provide the means, methods, or instrumentalities which are intended to facilitate the accomplishment of the general purpose, and are germane to it, may be embraced in the body of the act without violating this provision of the Constitution. *State v. O'Day*, 74 S. C. (448), 449, 54 S. E., 607; *Aycock-Little Co. v. South-*

*ern Ry., 76* S. C., 331, 57 S. E., 27; *Johnson v. Road & Highway Commission, 97* S. C. (205), 212, 81 S. E., 502. It is not necessary that the title should be an index of the contents of the statute."

■ Portions of the rather long title are: "To regulate the manufacture, sale, possession, transportation, and use of alcoholic liquors * * * To provide for the administration and enforcement" of the act. The title need only be the subject of the legislation, which this amply is, and there is but one subject; and the resisted regulations are clearly related to that subject, as are the rule-making powers of the commission. Neither logic nor law has been violated by their promulgation, for lack of relationship to the subject (title) of the act. The following is contained in 30 Am. Jur., 261: "*Regulation* implies that the thing regulated is permitted or suffered to exist subject to control or direction by restriction or rule. As applied to the liquor traffic, the term is usually understood to imply mere control or curtailment of the extent, methods, or incidents of the business".

Injunction is denied and the petition dismissed.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne and Oxner concur.

Mr. Associate Justice Taylor, dissenting:

I respectfully disagree with the majority opinion in this case for the reason that I believe the purported authority given the Tax Commission to "Adopt such regulations as it may deem necessary and proper to effect an equitable distribution of alcoholic liquors in this state" is an unconstitutional grant of legislative power to an administrative body in that the act does not define or suggest what an equitable distribution is, no standard is set up or any yardstick given whereby same may be ascertained. The fact that this court and/or the Tax Commission might agree that the rules and regulations promulgated under the act have as a practical matter effected such equitable distribution in no way affects the constitutionality or unconstitutionality of the act.

I am further of the opinion that however else it may be described the present method of effecting an equitable distribution is nothing more or less than rationing, the doing of which I seriously question is within the power of the General Assembly itself.

If rules and regulations such as these are upheld as a valid and proper delegation of authority, it is difficult for this writer to see at what point an administrative body can be said to have exceeded its authority.

For the above reasons I am of opinion that the petition should be granted.