16977

SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Plaintiff, v. CHARLES RALPH HARBIN *ET AL.,* Defendants

(86 S. E. (2d) 466)

*Messrs. T. C. Callison, Attorney General,* and *James S. Verner, Assistant Attorney General,* of Columbia, *for Plaintiff,*

*Messrs. Thomas A. Wofford* and *J. Wiley Brown,* of Greenville, *for Defendant, Charles Ralph Harbin,*

March 15, 1955.

Oxner, Justice.

By writ of certiorari, we are asked to review an order of the Circuit Court setting aside and declaring null and void a suspension by the Highway Department of the driv-

er's license of defendant Charles Ralph Harbin. The suspension was made under a regulation of the Highway Department known as the "Point System". The Court below held that the Department was without authority to adopt this regulation. The correctness of this conclusion is challenged on this appeal.

Effective as of November 24, 1953, the Department issued the following rule or regulation:

"In order to do everything within reason to reduce traffic accidents the Department will commence immediately to charge each traffic violation committed and reported to the Department against the record of the offending driver. Each violation will be graded as to seriousness in accordance with the following table which is based on violations involved in accidents during 1952.

| "Moving Violation | Violation Points |
|---|---|
| "Disregarding sign or signal | 3 1/3 |
| Driving under influence | 10 |
| Entering highway without stopping | 3 1/3 |
| Following too closely | 2 |
| No right of way | 3 1/3 |
| Passing improperly | 2 |
| Passing stopped school bus | 3 1/3 |
| Reckless driving | 5 |
| Driving too fast for conditions | 3 1/3 |
| Improper turning | 2 |
| Driving on wrong side of road | 2 |
| Failure to dim lights | 2 |
| Improper lights | 2 |
| No signal or improper signal | 2 |
| Improper parking | 2 |
| Responsibility for accident involving personal injury and/or property damage in excess of $100.00 | 5 [1] |

---

[1] When violation is driving under influence 10 points will be charged.

| "Moving Violation | Violation Points |
|---|---|
| Responsibility for accident involving no personal injury and property damage of $100.00 or less | 2 [2] |
| All warnings and minor violations | 2 |

"When the total of violation points charged against a driver reaches a minimum of 10 the driver will be personally interviewed by a member of the Highway Patrol for the purpose of determining whether the offender's license to drive should be suspended or whether it appears from the circumstances that he should be allowed another chance. In cases where the driver is permitted to retain his license after the interview any additional violation committed by him will be deemed sufficient grounds for an immediate suspension of his license. The Department, of course, has no discretion where cases involve driving under the influence of intoxicants or narcotic drugs, reckless homicide, and two convictions for reckless driving. The suspension of drivers' licenses under these circumstances is required by law.

"Highway Patrol personnel conducting the personal interviews will approach the work in a spirit of helpfulness and with utmost courtesy. The primary purpose of the program is to make better and safer drivers and not to suspend licenses except where all other efforts in this direction have failed.

"In order to give this program maximum effectiveness members of the Highway Patrol should exert every effort to encourage local enforcement authorities to send to the Department copies of all violation warnings and summonses issued by them, and copies of reports of all accidents they investigate."

In December, 1953, the defendant Harbin forfeited a bond for speeding in North Carolina; in January, 1954, he

---

[2] Or point value of violation involved, whichever is the higher.

was given a warning ticket in South Carolina for driving "too fast for conditions"; in February, 1954, he forfeited bond for speeding in South Carolina; and in March, 1954, forfeited bond for the same offense in Georgia. All of the foregoing was duly reported to the Highway Department resulting, under the foregoing regulation, in a total of 12 points, 10 for speeding and 2 for the warning ticket, being charged against him.

On May 7, 1954, he was notified by the Highway Department to appear at its office in Greenville on May 14th. He duly appeared and was interviewed by a sergeant of the Highway Patrol. He admitted forfeiting bonds for speeding and receiving a warning ticket on the occasions mentioned. His only explanation was that the speedometer on his tractor-trailer had been out of repair for a considerable time. After this interview, the sergeant recommended the suspension of his license. On May 22, 1954, he received notice from the Highway Department that effective as of that date, his license was suspended for a period of five months. Immediately thereafter he petitioned the Circuit Court for a review of the suspension. On his petition and the return filed by the Highway Department, a hearing was had and testimony taken before the Circuit Judge. He concluded, as hereinbefore stated, that the Highway Department was not empowered to put into effect the so-called Point System and revoked its action in suspending Harbin's license.

The Department apparently concedes that it is not expressly empowered by statute to adopt the "Point System", but contends that such authority is included in the broad power to refuse, suspend or revoke a driver's license given it by Act No. 603 of the Act of April 4, 1930, 36 St. at L. 1057, which with certain amendments is now incorporated in Chapter 2 of Title 46 of the 1952 Code. We had occasion in the recent case of *Herndon v. South Carolina State Highway Department,* S. C., 85 S. E. (2d) 287, to discuss and review this legislation. It was there pointed out

that for some causes the suspension of a driver's license is made mandatory, while under certain other circumstances the question of suspension or revocation is left to the discretion of the Department, subject to the right of appeal to the Circuit Court.

The 1930 Act was the first comprehensive legislation in this State requiring a license to drive a motor vehicle and regulating the issuance, suspension and revocation of such licenses. Section 9 authorizes the Department to conduct an examination as to the qualifications of any person applying for a driver's license, which shall include such tests as the Department may prescribe. Section 19 authorizes the Department to refuse a license "to any person for any cause satisfactory to said Department." Under the terms of Section 9, the Department, "for cause satisfactory" to it, is empowered to suspend or revoke a driver's license for a period of not more than one year. Any person denied a license or whose license has been suspended or revoked is given the right to appeal to a Circuit Judge whose decision is final.

Section 16 requires the Highway Department to revoke for a period of one year the license of any person convicted of (a) "manslaughter, resulting from the operation of a motor vehicle"; (b) "any crime constituting a felony in the commission of which a motor vehicle is used"; or (c) "three charges of reckless driving under the laws of this State all within a period of twelve months from the time of the first conviction." Revocation under any of the foregoing circumstances is mandatory. This section then provides that the Department may conduct an investigation and hold a hearing to determine whether a license shall be suspended or revoked upon receiving a verified complaint (a) that a licensee is afflicted with such mental or physical infirmity or disability as would justify the refusal of a driver's license; (b) that he has through the negligent operation of a motor vehicle caused death or injury to any person, or serious damage to property; or (c) that he is

an habitual reckless, negligent or incompetent driver of any motor vehicle. After providing the method for holding such hearing, it is stated:

"If the findings are to the effect that the person referred to therein is incompetent or is unfit to operate a motor vehicle upon any grounds upon which license might be refused, as stated in this Act, the Highway Department upon a review of such findings shall have authority to forthwith revoke the license of such person, or if the findings are to the effect that the person therein referred to has by reason of negligence or reckless driving endangered life, limb, or property or has thereby caused loss of life or injury to person or property, the Highway Department upon a review of such findings shall have power to suspend the license of such person for a period not exceeding six months, or may revoke such license, and in either event shall require that such license issued to such person be surrendered to the Motor Vehicle Division."

Section 28 is as follows:

"The Highway Department is hereby authorized and empowered to promulgate rules and regulations for the administration and enforcement of this Act and all such rules and regulations not inconsistent with this Act shall have the full force and effect of law."

By reference to Chapter 2, Title 46 of the 1952 Code, it will be seen that in the codification of the 1930 Act, certain changes were made in arrangements and phraseology and subsequent amendments added, but none of these changes or amendments have any material bearing on the question now presented. It is sufficient to consider the act as it was originally written.

The Department contends that the broad authority to suspend or revoke a license for a period of not more than a year for any cause which it deems satisfactory, Section 9 of the 1930 Act, now Section 46-172 of the 1952 Code, together with the authority to promote rules and regulations

for the administration and enforcement of the act, Section 28 of the 1930 Act, now Section 46-187 of the 1952 Code, fully empowers it to set up the "Point System", which it says embodies reasonable criteria to be used in the exercise of its discretionary power. It argues that all of the violations mentioned therein have a direct bearing on safety in the use of the highways and that the "Point System" is in accordance with the legislative policy.

Harbin asserts that Section 46-172 fixes no standard and lays down no intelligible guide to which the Department must conform but leaves the right to revoke or suspend in its unrestricted and uncontrolled discretion, rendering said section void as an unconstitutional delegation of legislative power. In addition to attacking the constitutionality of the provision empowering the Highway Department to suspend a license "for cause satisfactory" to it, he challenges the reasonableness of some of the points and says that several others are contrary to legislative enactments. He points out that under this regulation a license may be suspended for five "warnings" given by a traffic officer, with no opportunity on the part of the driver to contest the justification for such warnings or to be heard on the question as to whether he has violated a traffic regulation, thereby making it possible to revoke a license at the whim or caprice of such officer. Attention is also called to the fact that for driving under the influence of intoxicants, a charge of 10 points is made, enabling the Department to suspend for a period of one year for a first offense, while the statute, Section 46-348 of the 1952 Code, limits the suspension for a first offense to six months. Further illustrating his contention that the "Point System" goes beyond legislative sanction, it is said that the Department may suspend for one year for two acts of reckless driving, while Section 46-342 of the 1952 Code limits the suspension to three months for the second offense of reckless driving.

Although there may be considerable merit in the attack on the reasonableness and validity of several of the items

in the "Point System", we find it unnecessary to pass upon this phase of the matter and will proceed to decide the basic question of whether the power given the Department by Section 46-172 is unconstitutional upon the ground that suspension or revocation is left to the absolute, unregulated, and undefined discretion of the Department.

The question of delegation of legislative power has confronted the courts with many perplexing problems, particularly during recent years when the complexities of government have been constantly on the increase. It is well settled that while the legislature may not delegate its power to make laws, in enacting a law complete in itself, it may authorize an administrative agency or board "to fill up the details" by prescribing rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. *Davis v. Query,* 209 S. C. 41, 39 S. E. 2d 117; *State v. Taylor,* 223 S. C. 526, 77 S. E. 2d 195, and cases therein cited. "However, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform, with a proper regard for the protection of the public interests and with such degree of certainty as the nature of the case permits, and enjoin a procedure under which, by appeal or otherwise, both public interests and private rights shall have due consideration." *State v. Stoddard,* 126 Conn. 623, 13 A. 2d 586, 588.

The difficulty is in the application of these general principles, for there is no fixed formula for determining the powers which must be exercised by the legislature itself and those which may be delegated to an administrative agency. The degree to which a legislative body must specify its policies and standards in order that the administrative authority granted may not be an unconstitutional delegation of its own legislative power is not capable of precise definition. "There are many instances where it is impossible or impracticable to lay down criteria or standards without de-

stroying the flexibility necessary to enable the administrative officers to carry out the legislative will; especially may such a contingency arise when the discretion conferred relates to police regulations." *Matz v. J. L. Curtis Cartage Co.,* 132 Ohio St. 271, 7 N. E. 2d 220, 225.

A license to operate a motor vehicle is not a property right but a mere privilege which is subject to reasonable regulations under the police power in the interest of public safety and welfare. Such privilege is always subject to revocation or suspension for any cause having to do with public safety, but cannot be revoked arbitrarily or capriciously.

When the authority of the State Highway Department to suspend or revoke a license for any cause which it deems satisfactory is considered in the light of the foregoing principles, said provision must be declared invalid as an unlawful delegation of legislative power. It sets up no standard to guide the Department and contains no limitations. As a general rule, "A statute which in effect reposes an absolute, unregulated, and undefined discretion in an administrative body bestows arbitrary powers and is an unlawful delegation of legislative powers." 42 Am. Jur., page 343. We have held invalid ordinances attempting to vest such arbitrary powers in municipal authorities. *Henderson v. City of Greenwood,* 172 S. C. 16, 172 S. E. 689; *Schloss Poster Advertising Co. v. City of Rock Hill,* 190 S. C. 92, 2 S. E. 2d 392.

It is suggested that there is no reason to suppose that the Department will revoke a license arbitrarily or capriciously and that it may fairly be assumed that this will only be done when necessary for the safety of the public. But this constitutes no answer to the question of whether there is an unlawful delegation of legislative power. "When courts are considering the constitutionality of an act, they should take into consideration the things which the act affirmatively permits, and not what action an ad-

ministrative officer may or may not take." *Northern Cedar Co. v. French,* 131 Wash. 394, 230 P. 837, 843. "The presumption that an officer will not act arbitrarily but will exercise sound judgment and good faith cannot sustain a delegation of unregulated discretion." 42 Am. Jur., Public Administrative Law, Section 45.

In oral argument counsel for the Department conceded that there was considerable doubt as to the validity of the power granted by Section 46-172 if considered alone, but contended that the act as a whole establishes a clear legislative policy governing the Highway Department in the exercise of its discretionary power to suspend or revoke a license. It is said that the general purpose of the Act is to deny a driver's license to those who by reason of physical or mental affliction are unfit to operate a motor vehicle, and to revoke the licenses of those who by their negligent or reckless acts indicate a disregard for the safety of others on the highways, from which it is argued that the discretion given the Department can only be exercised for a cause having to do with public safety. But we are not at liberty to add such a limitation to the clear and unambiguous language of Section 46-172. In other portions of the Act and in Article 5, Chapter 3, Title 46 of the 1952 Code, suspension is made mandatory for certain causes. Discretionary authority is then given the Department to suspend or revoke a license for certain other causes, including physical or mental infirmities, negligent operation of a motor vehicle causing death or injury to any person or serious damage to property, and habitual negligent or reckless driving. By Section 46-172 it was evidently intended to give the Department the right to revoke for causes other than those which had been expressly provided for. And in the grant of this authority, there is no standard except the personal judgment of the administrative officers of the Department.

Our conclusion that Section 46-172 contains an unconstitutional delegation of legislative power is fully sustained by *Thompson v. Smith,* 155 Va. 367, 154

S. E. 579, 581, 71 A. L. R. 604. In a well considered opinion the Court there held invalid. an ordinance of the City of Lynchburg which, after providing for mandatory suspension of licenses for certain causes, authorized the Chief of Police "to revoke the permit of any driver who, in his opinion, becomes unfit to drive an automobile on the streets of the city, * * *". The Court concluded that the right to drive an automobile may not be left to the arbitrary and uncontrolled discretion of the Chief of Police..

The case of *La Forest v. Board of Commissioners of District of Columbia,* 67 App. D. C. 396, 92 F. 2d 547, 548, strongly relied on by the Highway Department, is distinguishable. In that case the Court upheld a statute authorizing the Commissioners of the District of Columbia or their designated agent to " 'revoke or suspend an operator's permit for any cause which they or their agent may deem sufficient.' " D. C. Code Supp. II, 1935, T. 6, § 250(a). There was a strong dissent. It was apparently assumed in the majority opinion that this provision standing alone would constitute an unlawful delegation of legislative power, but by reading into it other portions of the act, the Court construed said provision as permitting a revocation or suspension only in cases where there was shown a breach of the usual and reasonable regulations made concerning the control of traffic.

Having concluded that the provision in Section 46-172 of the 1952 Code authorizing the Highway Department to suspend or revoke a driver's license "for cause satisfactory" to it, is an unconstitutional delegation of legislative power, it follows that the Department was without authority to adopt the "Point System". We are not now called upon to determine the difficult question of whether such power may be delegated to said agency. There can be no doubt that the Legislature, which under its police power has full authority in the interest of public safety to prescribe conditions under which the privilege to operate a motor vehicle may be granted and upon which such privilege will

be revoked, may make the violation of traffic regulations, or other cause having to do with public safety, the basis for the revocation or suspension of a driver's license, and may prescribe the relative weight to be given to the violation of any statute or ordinance regulating traffic. But whether the power to evaluate such violation may be committed to an administrative agency presents a serious question not involved or argued on this appeal, and which we leave undecided.

We find no error in the order under review. It is affirmed.

BAKER, C. J., and STUKES, TAYLOR and LEGGE, JJ., concur.

