0224

Ian S. GALE, M.D., Appellant, v. The STATE BOARD OF MEDICAL
EXAMINERS OF SOUTH CAROLINA, Respondent.

(320 S. E. (2d) 35)

Court of Appeals

*Charles Porter* and *E. Russell Jeter*, Columbia, *for appellant.*

*Karen LeCraft Henderson*, Columbia, *for respondent.*

Heard June 1, 1984.

Decided Aug. 8, 1984.

SANDERS, Chief Justice:

The State Board of Medical Examiners of South Carolina revoked the license of Ian S. Gale to practice medicine in this state. Gale appeals the circuit court order dismissing his petition for reversal or modification of the Board's decision. We affirm.

The Board initiated a complaint against Gale, a practicing psychiatrist, alleging he (1) was convicted of eight counts of housebreaking and grand larceny, (2) used information obtained through his physician-patient relationship to further criminal activities, (3) wrote prescriptions for controlled substances outside a bona fide physician-patient relationship and later repurchased some of the substances from the user, and (4) suffers from a mental disability which renders him unfit to practice medicine. The Board's Medical Disciplinary Commission, a panel of three appointed doctors, heard testimony on the allegations.

Gale testified he holds a bachelor's degree in biology from Lehigh University in Bethlehem, Pennsylvania, and a medical degree from Temple University School of Medicine in Philadelphia, Pennsylvania, where he was born. He interned for one year in Phoenix, Arizona, and served a three-year residency in psychiatry at the University of Utah Medical Center. He served in the United States Army for two years as a psychiatrist at Fort Jackson and remained in Columbia to begin private practice in 1971. The following year he entered the University of South Carolina Law School and graduated in 1977.

Gale stipulated he had pleaded guilty to eight counts of housebreaking and grand larceny committed over a 3-year period for which he received a 15-year prison sentence. He testified he helped law enforcement officials clear up more than 100 housebreakings which he committed.

A former patient of Gale's testified she saw him for approx-

imately one year for marriage counseling, during which time he prescribed antidepressants for her. Their professional relationship ended and they began a romantic one which lasted three years. Gale prescribed antidepressants and amphetamines for her during this period, writing prescriptions in her true name as well as a fictitious one. He also treated her as a general physician, prescribing medication when she was ill. According to this witness, Gale gave her money to fill prescriptions on several occasions, after which she gave at least some of the drugs back to him. She testified she initiated their breakup and denied she had ever said she would get even with Gale. In addition, she testified Gale refused to treat her as a psychiatrist while they were personally involved and also refused to examine her after their personal relationship ended. (He referred her to another psychiatrist instead.)

Gale admitted the personal relationship with his former patient and testified he prescribed antidepressants for her both as treatment and for weight reduction. He also testified he gave her money to fill the prescriptions because she was "practically destitute," and he did, on occasion, take some of the medication for personal use to treat short-term depression. He added that he monitored her use of medication as he did with all patients. The last time he saw her, he refused to prescribe more medication because she had developed diabetes and, instead, referred her to an internist. Gale went on to testify that during their personal relationship he had a limited doctor-patient relationship with this woman and her children.

A Columbia pharmacist testified he had filled a 1977 prescription for thirty amphetamines written by Gale for one Donald Gorham. He further testified he had never met Gale personally and would not be able to identify the person for whom he filled the prescription. Gale conceded he had obtained several bogus driver's licenses, including one in the name of Donald Gorham. He testified he did so "Just to see if it could be done," and because "It struck [his] fancy at the time."

Gale also testified he never considered the light his criminal activities would put on the medical and legal professions. He regretted the damage done to them and society at large and denied using any confidential information gained through his patients to further his criminal activity. At the

time of the Panel hearing, Gale testified he was working in a prison warehouse moving boxes. He expressed the desire to be able to use his medical skills while incarcerated, even if limited to the practice of general medicine under the supervision of another licensed physician. He also stated he hoped to practice medicine again upon his release from prison.

The Disciplinary Panel found Gale had been convicted of eight counts of housebreaking and grand larceny, had written prescriptions for controlled substances outside a bona fide physician-patient relationship, repurchased them and wrote a prescription for himself under false circumstances, and had engaged in conduct (housebreakings and obtaining fraudulent driver's licenses) which was indicative of sociopathic and possibly psychopathic behavior. The Panel expressly stated this last finding was not necessary to its decision. Although it found there was insufficient evidence to prove Gale had used information gained from physician-patient relationships to further criminal activities, it did conclude he had violated the following provisions of section 40-47-200 of the 1976 Code of Laws of South Carolina, as amended:

> (2) That the holder of a license has been convicted of, has pled guilty to, or has pled nolo contendere to, a felony or any other crime involving moral turpitude or drugs . . . .
>
> (7) That the holder of a license has violated the principles of ethics as adopted by the State Board of Medical Examiners and published in its regulations.
>
> (8) That the holder of a license is guilty of engaging in any dishonorable, unethical, or unprofessional conduct that is likely to deceive, defraud, or harm the public.
>
> (9) That the holder of a license is guilty of the use of any false or fraudulent statement in any document connected with the practice of medicine.
>
> (12) That the holder of a license is guilty of violating the code of medical ethics adopted by the board in accordance with § 40-47-20 or has been found by the board to lack the ethical or professional competence to practice medicine or osteopathy.

The Panel also concluded Gale had violated the following provisions of State Board of Medical Examiners Regulation 81-60, Volume 26 of the 1976 Code:

A. .... Physicians should merit the confidence of patients entrusted to their case, rendering to each a full measure of service and devotion. ...

D. The medical profession should safeguard the public and itself against physicians deficient in moral character or professional competence. Physicians should observe all laws, uphold the dignity and honor of the profession and accept its self-imposed disciplines. ...

F. A physician should not dispose of his service under terms or conditions which tend to interfere with or impair the free and complete exercise of his medical judgment and skill or tend to cause a deterioration of the quality of medical care. ...

G. .... Drugs, remedies or appliances may be dispensed or supplied by the physician provided it is in the best interests of the patient. ...

Based upon these findings and conclusions, the Panel recommended Gale's license to practice medicine in South Carolina be revoked.

Following a hearing on the matter, the State Board of Medical Examiners adopted the Panel's findings of fact, conclusions of law and recommendation. It did not, however, include in its order the Panel's statement that the finding of an indication of sociopathic and possibly psychopathic behavior was not necessary to its decision.

Upon Gale's petition to circuit court, the judge applied the substantial evidence test of *Lark v. Bi-Lo, Inc.*, 276 S. C. 130, 276 S. E. (2d) 304 (1981), and affirmed the Board's findings of fact. He also concluded that, contrary to Gale's contention, section 40-47-200 does not invalidly delegate legislative authority to the Board.

Gale first argues the circuit court erred in not reversing or modifying the order revoking his license because a finding by the Panel and the Board that he suffers from a mental disorder lacks a substantial evidentiary basis. We reject this argument. The Panel here made no finding that Gale suffered from a mental disorder. Rather, it found his conduct *indicated* one such disorder and *possibly* another. Furthermore, the Panel specifically disclaimed this finding as necessary to its recommendation that his license be revoked. The Board expressly adopted the findings and conclusions of

the Panel and, while its order did not reiterate the Panel's statement that this finding was not necessary to its decision, neither the Panel nor the Board based revocation on subsection (6) of the statute which refers to mental disability.

Gale next argues an abuse of discretion on the basis the ■ sanction of revocation is not justified by the two basic Panel findings adopted by the Board (housebreaking convictions and prescription writing outside a bona fide physician-patient relationship) or by past Board precedent. He concedes his criminal convictions but argues the Board's evidence concerning his prescription writing should be discounted because it came from a former paramour seeking some form of retaliation.

As to lack of justification for the sanction imposed, the Board is not required by sections 40-47-10 through 40-47-260 to invoke certain sanctions for certain violations. A showing of any misconduct listed in section 40-47-200 may result in license revocation, suspension, restriction or limitation. The Panel findings, adopted by the Board and affirmed by the circuit judge, are supported by substantial evidence. Accordingly, we find no abuse of discretion in the imposition of license revocation.

The argument that the sanction of revocation is unprecedented for similar violations is not supported by the record before us which contains no evidence of prior actions by the Board in other cases. Thus, we have not been presented with a sufficient record on appeal upon which to address this argument. *See Germain v. Nichol,* 278 S. C. 508, 299 S. E. (2d) 335 (1983).

Finally, Gale argues section 40-47-200 allows a delegation of legislative authority in violation of the "non-delegation doctrine" of Article I, § 8 of the South Carolina Constitution because no standards are given to the Board for determining which sanction will apply to which violation.

The "non-delegation doctrine" prohibits the legisla-■ ture from vesting unbridled, uncontrolled or arbitrary power in an administrative agency. *Bauer v. South Carolina State Housing Authority,* 271 S. C. 219, 246 S. E. (2d) 869 (1978). In determining whether a statute violates the doctrine, we must consider the administrative actions the act affirmatively permits and examine the entire act in light of its surroundings and objectives to ascertain express or im-

plied standards. *Bauer.* All reasonable doubt must be resolved in favor of the constitutionality of a statute. *Bauer.*

As support for his argument on this issue, Gale relies upon *South Carolina State Highway Department v. Harbin,* 226 S. C. 585, 86 S. E. (2d) 466 (1955). We adopt the following portion of the circuit court order which distinguishes *Harbin* from the present case:

> ... *[Harbin]* invalidated a statute authorizing the State Highway Department to suspend or revoke a driver's license for a period of not more than one year "for cause satisfactory" to it. Pursuant to this language, the State Highway Department had set up a point system by rule and regulation. In striking down the section of the statute authorizing suspension or revocation "for cause satisfactory," the Court declared:
>
> > When the authority of the State Highway Department to suspend or revoke a license for any cause which it deems satisfactory is considered in the light of the foregoing principles, said provision must be declared invalid as an unlawful delegation of legislative power. It sets up no standard to guide the Department and contains no limitations. 226 S. C. at 595.
>
> Other provisions of the statute, however, included a list of violations which could result in the suspension or revocation of a driver's license:
>
> > ... [i]n other portions of the Act ..., suspension is made mandatory for certain causes. Discretionary authority is then given the Department to suspend or revoke a license for certain other causes, .... 226 S. C. at 596.

Those provisions were left intact. Section 40-47-200 of the Code is similar not to the "for cause satisfactory" language struck down in *Harbin* but, instead, to the statutory provisions authorizing the State Highway Department to suspend or revoke a driver's license for certain causes at its discretion. Section 40-47-200 of the Code specifically sets forth the acts of medical misconduct ("causes") for which the Respondent Board can

sanction a physician; it does not authorize that Board to create new acts ("causes"), the constitutional vice of the statutory scheme in *Harbin.* The discretionary authority to affix a penalty for a statutorily defined "cause" was not invalidated in *Harbin* and similarly will not be invalidated with respect to the acts of medical misconduct specified in Section 40-47-200 of the Code. The General Assembly has provided a maximum and a minimum sanction that can be imposed for designated acts of medical misconduct. The maximum is revocation of a physician's license to practice medicine in South Carolina and the minimum is a private reprimand of a physician. Nothing more is required under the non-delegation doctrine.

Along with the above reasoning, we note that the United States Supreme Court has upheld similar statutes which leave to the enforcing officers the discretion of matching the measure of discipline to the specific case. *Barsky v. Board of Regents of University of State of New York,* 347 U.S. 442, 74 S. Ct. 650, 98 L. Ed. 829 (1954).

The discretion exercised by the Board is not unbridled, uncontrolled or arbitrary. We find no unconstitutional delegation of legislative authority under section 40-47-200.

Accordingly, the order of the circuit court is affirmed.

GARDNER and CURETON, JJ., concur.