17146

D. C. GRIGGS et al., Petitioners, v. J. EARLE HODGE, Chairman et al., comprising the legally constituted Chesterfield County Memorial Hospital Board, Respondents.

(92 S. E. (2d) 654)

*Messrs. Williams & Parler,* of Lancaster, *for Respondents on this motion and Plaintiffs in Circuit Court.*

*Messrs. Edward M. Leppard,* of Chesterfield, and *L. C. Wannamaker,* of Cheraw, *for Removants-Respondents,*

April 23, 1956.

OXNER, Justice.

This action was brought by certain residents and taxpayers of the County of Chesterfield for the purpose of enjoining the members of the Chesterfield County Memorial Hospital Board from locating the hospital in the town of Cheraw and requiring said Board to select a site in or near the town of Chesterfield. On a petition filed in the Court of Common Pleas for Chesterfield County, an order was issued by that Court on March 13, 1956, requiring respondents, who constitute the membership of said Board, to show cause on April 16, 1956, why the relief sought in the petition should not be granted. Respondents interposed a demurrer and filed a return. They further gave notice of a motion that the Supreme Court assume original jurisdiction of the cause, to which was attached an affidavit showing the public nature of the controversy and the urgency of a final decision. This motion was heard on April 9, 1956 and on the same day an order was entered staying further proceedings in the Court of Common Pleas and assuming jurisdiction of the cause. Briefs were later filed and the case heard on the merits on April 2, 1956.

By a joint resolution approved on January 26, 1955, 49 St. at L., 880, the General Assembly directed that a special election be held in the County of Chesterfield "on Saturday, January 29, 1955, to determine whether or not the qualified electors of the county desire the establishment of a county hospital by the County of Chesterfield", and that the question be submitted by ballot in the following form:

"Are you in favor of the establishment of a county hospital by Chesterfield County; said hospital to be located in or near the Town of Chesterfield and to cost approximately

four hundred thousand dollars, of which the Federal Government will pay sixty-five per cent and Chesterfield County thirty-five per cent?

"In favor of the establishment of a county hospital ☐

"Opposed to the establishment of a county hospital ☐".

The joint resolution further required the Commissioners of Election to "report the result of the election to the Legislative Delegation of the county." The election was duly held and resulted in a vote of 2,650 for, and 1,410 against, the establishment of the hospital.

By Act No. 428, approved on March 24, 1955, 49 St. at L. 881, the Chesterfield County Memorial Hospital Board was created, to be composed of one elector from each of the nine townships in Chesterfield County appointed by the Governor on recommendation of the Legislative Delegation. Said Board was authorized to construct, equip and operate a county hospital and home for nurses, and was "granted, without limiting the generality of the powers herein vested in it, all authority and powers to execute the provisions of this Act, and to carry out and accomplish the purposes thereof." Sections 8 and 5, respectively, of the Act read as follows:

"The Board is hereby authorized and empowered to select and acquire by purchase, or condemnation, a proper and adequate site and location for the construction and establishment of a county hospital and nurses' home, facilities and buildings. The Board is requested to acquire a site of sufficient size to provide for future expansion and adequate parking facilities."

"The physicians and surgeons in Chesterfield County shall constitute an advisory committee to the Board. The Board shall seek the advice, counsel and assistance of the advisory committee in all matters pertaining to the selection of a site and the construction, equipping and establishing of a suitable hospital plant and facilities."

The Act authorized the expenditure of the sum of $500,-000.00 for the construction and equipment of said hospital

and nurses' home, 35% thereof to be paid from county funds and the remaining 65% by grant from the Federal Government. The Act further provided for an annual tax levy of four mills for the maintenance and operation of said hospital.

In Act No. 429, approved April 8, 1955, 49 St. at L. 886, an appropriation was made to cover the cost of the referendum held on January 29th. By Act No. 430, approved May 13, 1955, 49 St. at L. 888, the sum of $10,000.00 was appropriated for the acquisition and improvement of the hospital site and other expenses. By Act No. 431, 49 St. at Large, 889, approved May 27, 1955, Act No. 428 was amended so as to eliminate the requirement that surplus funds be used in paying the county's share of the cost of the hospital. As will be hereinafter seen, none of these three acts has any material bearing on the question in controversy.

On June 3, 1955, by a vote of 5 to 4, the Board selected the town of Cheraw as the site for the hospital. On September 7, 1955, the Legislative Delegation agreed to pass an act increasing from $500,000.00 to $600,000.00 the amount to be expended upon condition that $35,000.00 be raised by public subscription. In December, 1955 the Board acquired by gift from the town of Cheraw six acres of land upon which to construct the hospital. The sum of $35,000.00 was duly raised by public subscription and paid to the Treasurer of Chesterfield County on January 30, 1956. This amount, when matched by $65,000.00 of Federal funds, would provide the contemplated additional sum of $100,000.00. By Act approved February 11, 1956, — St. at L. —, the General Assembly, in accordance with the agreement made by the Delegation in September, 1955, increased the total amount to be expended for the hospital and nurses' home to $600,-000.00.

It is alleged in the petition that the action of the Board in locating the hospital in the town of Cheraw was contrary to the legislative intent as expressed in the joint resolution providing for the referendum which, it

is claimed, required the Board to select a site in or near the town of Chesterfield. We do not think so. The purpose of the resolution, as clearly stated therein, was to ascertain, for the information of the Delegation, "whether or not the qualified electors of the county desire the establishment of a county hospital by the County of Chesterfield." The General Assembly was at liberty to disregard the wishes of the voters and take whatever action it saw fit with reference to the establishment of the hospital. Nowhere in the resolution except in the form of the ballot is there any reference to the proposed location of the hospital or the amount to be expended in constructing same. The conclusion is inescapable that the referendum was merely of an advisory nature. The ballot refers both to the proposed location and the contemplated cost of the hospital. If, as petitioners contend, the General Assembly was bound by the location mentioned in the ballot, it could just as plausibly be argued that it was prohibited from authorizing an expenditure in excess of the sum of $400,000.00 but there is no suggestion by any one that the referendum had that effect. The General Assembly later determined by Act No. 428 to leave the selection of the site, as well as all other matters relating to the establishment of the hospital, to the Board. While we see no repugnancy between this Act and the joint resolution providing for the referendum, it is well established that even if there were any inconsistency, the last enactment would prevail. *Ward v. Cobb,* 204 S. C. 275, 28 S. E. (2d) 850; *South Carolina Electric & Gas Co. v. South Carolina Public Service Authority,* 215 S. C. 193, 54 S. E. (2d) 777.

It is stated in the brief of petitioners that in selecting a site for the hospital, the Board did not seek the "advice, counsel and assistance" of the physicians and surgeons of Chesterfield County as required by Act No. 428. However, the failure to observe this requirement is not charged in the petition and, therefore, is not properly before us.

Finally, it is argued that the action of the Board in selecting Cheraw as the site of the hospital constitutes a manifest abuse of discretion. Although we are doubtful whether this question is raised in the petition, we shall consider it. The town of Cheraw is located in the extreme eastern part of the county. The proposed hospital site is on Highway No. 9 about ten miles from Chesterfield, the county seat. It is argued that Cheraw is far removed from both the geographical center and the population center of Chesterfield County and that a hospital placed there cannot adequately serve the needs of all the people. After careful consideration of the numerous affidavits submitted by both parties, we are not convinced that there was a clear abuse of discretion in the selection of Cheraw as the site for the hospital. As a general rule, the courts will not attempt to interfere with the exercise of discretionary powers by a public board or subordinate governmental agency. *Schroeder v. O'Neill*, 179 S. C. 310, 184 S. E. 679; *South Carolina Electric & Gas Company v. South Carolina Public Service Authority, supra*, 215 S. C. 193, 54 S. E. (2d) 777; *Prosser v. Seaboard Air Line Railway Co.*, 216 S. C. 33, 56 S. E. (2d) 591; *Lee v. Berry*, 219 S. C. 346, 65 S. E. (2d) 257; 42 Am. Jur., Public Administrative Law, Section 211. To do so would necessitate substituting judicial discretion for administrative discretion. In *South Carolina Electric & Gas Co. v. South Carolina Public Service Authority, supra* [215 S. C. 193, 54 S. E. (2d) 785], the Court said: "The enabling act clearly contemplates the exercise of discretion by these representative boards and, as admitted by respondents, courts will not interfere with such discretionary powers of a subordinate governmental agency except in cases of fraud or clear abuse of power or where unreasonable or capricious."

The return of respondents is adjudged sufficient, the demurrer is sustained, and the action dismissed.

STUKES, C. J., and TAYLOR and LEGGE, JJ., concur.

Moss, J., disqualified.