**UNITED STATES of America**
**v.**
**Charles Richard RUCKMAN, Donald Walter Patterson, and Arthur Branam.**
**Crim. No. 8442.**

United States District Court
S. D. West Virginia,
at Huntington.
Jan. 5, 1959.

Duncan W. Daugherty, U. S. Atty., and Frank Eaton, Asst. U. S. Atty., Huntington, W. Va., for plaintiff.

Philip A. Baer, Ferguson, Baer & Ferguson, Huntington, W. Va., for defendants.

HARRY E. WATKINS, District Judge.

The three defendants were indicted at the October, 1958, term of this Court, for a violation of 18 U.S.C.A. § 1791, which reads:

"§ 1791. Traffic in contraband articles

"Whoever, contrary to any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution or takes or attempts to take or send therefrom any thing whatsoever, shall be imprisoned not more than ten years."

The indictment sets forth the charges in this case in the general language of the statute, in what defendants' brief denominates the "charging part" of the indictment, and then the indictment supplements those conclusions of law with a recitation of alleged facts pertaining to the time, place, method and plan involved in the offense. Defendants have filed a motion to dismiss the indictment, urging first that it fails to state an offense against the United States and particularly does not show a violation of § 1791, and secondly that § 1791 is unconstitutional.

Taking the points raised in the motion seriatim, I find no merit in defendants' contention that no offense is alleged here. The indictment charges in effect that 3¼ hours after his discharge from the Federal Prison Camp, Mill Point, West Virginia, defendant Ruckman delivered, pursuant to a prearranged plan, to defendants Patterson and Branam, who were inmates and prisoners of the prison, certain contraband articles of food and drink, and that the delivery took place on

a public highway about one-half mile outside the prison entrance. Alleging that the contraband articles were forbidden to be introduced into the prison, the indictment charges that these defendants "did *attempt* to introduce into and upon the grounds of the said Federal Prison Camp \* \* \*" these items of food and drink (emphasis added.) Defendants' brief tries to cast doubt upon these allegations by suggesting that perhaps the two inmates were escaping, or were free to roam the public highway, or that the alleged "plan" must have called for delivery of the contraband items outside the camp, so that the indictment does not charge a violation of § 1791. But those matters go to the proof in the case, and cannot be presumed to be true on this motion. If this were an indictment for introducing, rather than attempting to introduce, these items into the institution, defendants' contentions in this respect would be more in order. I conclude that the indictment clearly alleges a violation of § 1791, and the facts alleged are not inconsistent with the language of the statute used in the "charging part" of the indictment.

■ With respect to the constitutionality of § 1791, defendants aver that this statute is an unlawful delegation of legislative power to the executive branch of the Government, in violation of the due process clause of the United States Constitution, Amend. 5. The crux of defendants' argument is that this statute leaves to the Attorney General, rather than Congress, the determination of what constitutes an offense. Defendants recognize, in their brief, that there are many powers which the legislative branch of our Government can properly delegate to executive or administrative officers, but they urge that in such cases nothing can be left to the judgment of the delegate.

No case has been found where the constitutionality of § 1791 has heretofore been challenged, although the statute has been in effect .in its present form since 1948, and a similar statute preceded it since 1930. Reading the statute alone, the general policy behind it is obvious. Congress has determined it necessary to make it an offense against the United States to engage in the traffic of contraband articles into or out of Federal penal institutions. However, Congress further saw fit to allow the Attorney General, who has control of Federal prisons and correctional institutions, to make such rules and regulations as he thinks proper, determining what, if anything, may be introduced into or sent from such prisons. In other words, Congress laid down the broad policy which prohibits the attempt to introduce any thing into prisons, and then authorized the executive officer in charge of prisons to exercise a certain amount of discretion within the limits of that policy.

The criterion to be applied in testing the constitutionality of a delegation of power by Congress has been variously stated in numerous Supreme Court decisions involving similar statutes. The Government here points to the case of United States v. Grimaud, 1910, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563, involving an Act of Congress delegating to the Secretary of Agriculture the right to make rules and regulations, the violation of which was made a crime against the United States, concerning occupancy and use, such as grazing, of public forests and forest reservations. The Court held this was not an unwarranted delegation of legislative power, with the following comments which are apropos here:

"In the nature of things it was impracticable for Congress to provide general regulations for these various and varying details of management. Each reservation had its peculiar and special features; and in authorizing the Secretary of Agriculture to meet these local conditions, Congress was merely conferring administrative functions upon an agent, and not delegating to him legislative power." 220 U.S. at page 516, 31 S.Ct. at page 482.

"From the beginning of the government various acts have been

passed conferring upon executive officers power to make rules and regulations,—not for the government of their departments, but for administering the laws which did govern. None of these statutes could confer legislative power. But when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, the violation of which could be punished by fine or imprisonment fixed by Congress, or by penalties fixed by Congress, or measured by the injury done." 220 U.S. at page 517, 31 S. Ct. at page 483.

"That 'Congress cannot delegate legislative power [to the President] is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution.' Field v. Clark, 143 U.S. 649, 692, 12 S.Ct. 495, 36 L.Ed. 294. But the authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense." 220 U.S. at page 521, 31 S.Ct. at page 484.

That case involved the exercise of considerably more discretion by the executive officer than in the case at bar, for there the statute did not declare that the grazing of sheep on a forest reserve should be unlawful, but rather the Secretary was empowered "to regulate the occupancy and use and to preserve the forests from destruction," under which authority the Secretary laid down a rule or regulation regarding grazing. The Court held that the statute, not the Secretary, fixed the penalty, where the statute (Act of 1897, c. 2, 30 Stat. 36) stated: "any violation of the provisions of this Act or such rules and regulations shall be punished * * *," and the Secretary was not exercising legislative power.

And in United States v. Rock Royal Co-Operative, Inc., 1939, 307 U.S. 533, 574, 59 S.Ct. 993, 1013, 83 L.Ed. 1446, Mr. Justice Reed, speaking for the Court, stated:

"From the earliest days the Congress has been compelled to leave to the administrative officers of the Government authority to determine * * * the details of regulations which would implement the more general enactments. It is well settled, therefore, that it is no argument against the constitutionality of an act to say that it delegates broad powers to executives to determine the details of any legislative scheme. This necessary authority has never been denied."

Numerous other cases could be discussed involving similar instances where Congress has established a definite, prescribed statutory framework within which executive officers were held to properly exercise discretion in carrying out flexible administrative duties, but the above-cited cases suffice to show how the courts have ruled in such cases.

Defendants' brief states that pursuant to the authority vested in the Attorney General by § 1791, a regulation was promulgated effective September 18, 1948, which reads:

"The introduction or attempt to introduce into or upon the grounds of any Federal penal or correctional institution or the taking or attempt to take or send therefrom anything whatsoever without the knowledge and consent of the Warden or Superintendent of such Federal penal or correctional institution is prohibited."

Defendants challenge this regulation as not coming within the intent of § 1791, but I cannot agree. As stated previously, Congress made it an offense to attempt to introduce any thing into Federal prisons, if the Attorney General prohibited it. The Attorney General has

by regulation prohibited the trafficking of any thing unless the Warden or Superintendent gives consent, a reasonable regulation enabling the men in charge of the various institutions to know what is coming in or going out of their prisons. The regulation clearly limits itself to the authority delegated by the Act of Congress, and it certainly cannot be urged that the Attorney General must personally exercise the discretion of determining what may or may not enter each of our Federal prisons.

It is the ruling of this Court that the indictment in this case, No. 8442, sufficiently charges a crime against the United States, and specifically a violation of 18 U.S.C.A. § 1791; that § 1791 is not an unwarranted, unconstitutional delegation of legislative power; that the Attorney General has not exceeded his power in the regulation promulgated by him under the authority of § 1791; and that defendants' motion to dismiss must accordingly be denied. Counsel may prepare an approriate order.