17909

Truman Vincent COLE, Jimmy Don Rustin and Louis P. Cooper, Appellants, v. Colonel W. M. MANNING, Superintendent of South Carolina State Penitentiary, Respondent.

(125 S. E. (2d) 621)

*Law, Kirkland & Aaron* and *Edens & Hammer,* of Columbia, *for Appellants,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Victor S. Evans, Assistant Attorney General,* of. Columbia, *for Respondent,*

May 3, 1962.

LEGGE, Acting Associate Justice.

At the September, 1961, term of the Court of General Sessions for Richland County, a true bill was returned upon an indictment charging Truman Vincent Cole, Jimmy Don Rustin and Louis P. Cooper: (1) with conspiracy to violate Section 55-14 of the 1952 Code (Supplement) by furnishing to prisoners in the State Penitentiary ten thousand (10,-000) tablets of amphetamine, a drug that had been declared contraband by the Director of Prisons; (2) with having furnished and delivered the said drug tablets to said prisoners, in violation of Section 55-14; and (3) with unlawful possession, sale and distribution of said drug tablets. The case was thereafter transferred to the Richland County Court; and on September 18, 1961, Cole, Rustin and Cooper, who were represented by counsel, entered pleas of guilty to the conspiracy charge and were sentenced to imprisonment, —Cole and Cooper for two years, Rustin for one year. Thereafter upon their petition the Honorable John Grimball, Judge of the Fifth Judicial Circuit, issued a writ of habeas corpus to determine the legality of their confinement; and the matter was heard by him on September 30, 1961, the petitioners being again represented by counsel. On October 7, 1961, Judge Grimball issued his order holding the petitioners' confinement legal and denying their prayer for release. From that order they appeal, charging that their sentences were illegal and void because Section 55-14: (1) is an unlawful delegation of legislative authority to an administrative officer; and (2) did not have the effect of law because the rule or regulation of the Director of Prisons purporting to forbid the furnishing of amphetamine to prisoners, and declaring it contraband, had not been certified

and filed in the office of the Secretary of State as required by Section 1-11 of the Code.

The Act of May 24, 1960 (51 Stat. at L. 1917) established, as an administrative agency of the state government, a Department of Corrections, to implement and carry out the policy of the state with respect to its prison system. It declared, in Section 1, the legislative policy to operate, through the Department, a modern prison system, to the end, among others, "that those convicted of violating the law and sentenced to a term in the State Penitentiary shall have humane treatment, and be given opportunity, encouragement and training in the matter of reformation". It created, as the governing body of the Department, a State Board of Corrections composed of the Governor of South Carolina ex officio, and one member to be appointed by him from each of the state's six congressional districts. It provided for the employment by the Board of a Director of the prison system, with authority to manage the affairs of the system in accordance with the Board's policies and subject to its control and supervision. Section 17 of the Act, now appearing in the current cumulative supplement to the 1952 Code of Laws as Section 55-14, reads as follows:

"It shall be unlawful for any person to furnish any prisoner under the jurisdiction of the Department of Corrections with any matter declared by the Director of the prison system to be contraband. Matters considered contraband within the meaning of this section shall be those matters determined to be such by the Director and published by him in a conspicuous place available to visitors at each correctional institution. The violation of the provisions of this section shall constitute a felony and anyone convicted thereof shall be punished by a fine of not less than one thousand dollars nor more than ten thousand dollars, or imprisonment for not less than one year nor more than ten years, or both."

Section 1-11 of the 1952 Code provides that "rules and regulations adopted under authority of a general and per-

manent law of the State shall become effective only after they have been properly certified and filed in the office of the Secretary of State."

At the hearing before Judge Grimball counsel for the petitioners and for the respondent stipulated:

1. That the notice required by Section 55-14 was at the time of the commission of the offense, and had been for at least six months prior thereto, published by the Director in a conspicuous place available to visitors at the penitentiary;

2. That the said notice so published declared amphetamine tablets contraband; and

3. That the said notice was not filed with the Secretary' of State at the time of the commission of the offense.

In support of their contention that Section 55-14 unlawfully delegates legislative power to the Director of Prisons, appellants urge that it provides no standard by which the Director is to be guided in determining what things he may declare contraband and forbid to the furnished to the prisoners, and that the matter is thus left to his absolute, unregulated and undefined discretion.

It is elementary that the legislature may not delegate to an administrative agency its power to make laws.

But no violence is done to the principle of separation of governmental powers when a law, complete in itself, declaring a legislative policy and establishing primary standards for carrying it out, or, with proper regard for the protection of the public interest and with such degree of certainty as the case permits, laying down an intelligible principle to which the administrative agency must conform, delegates to the agency the power to prescribe regulations for the administration and enforcement of that law within its expressed general purpose. *Davis v. Query,* 209 S. C. 41, 39 S. E. (2d) 117; *State ex rel. Roddey v. Byrnes,* 219 S. C. 485, 66 S. E. (2d) 33; *State v. Taylor,* 223 S. C. 526, 77 S. E. (2d) 195; *South Carolina State Highway Depart-*

*ment v. Harbin,* 226 S. C. 585, 86 S. E. (2d) 466; *City of Darlington v. Stanley,* 239 S. C. 139, 122 S. E. (2d) 207.

As pointed out in the *Davis* and *Harbin cases, supra,* the difficulty that confronts the court when a delegated power is challenged lies not in the formulation of principles that should govern the decision, but in their application to the facts and circumstances of the particular case at hand. For it is apparent, from consideration of the numerous cases on the subject, that the degree of authority that may lawfully be delegated to an administrative agency must in large measure depend upon such circumstances, including the legislative policy as declared in the statute, the objective to be accomplished, and the nature of the agency's field of operation.

"It is well settled that it is not always necessary that statutes and ordinances prescribe a specific rule of action. On the other hand, some situations require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare." 11 Am. Jur., Constitutional Law, Section 234, at page 948.

A question substantially similar to that with which we are here concerned arose in *State v. Morgan* (La. 1959), 238 La. 829, 116 So. (2d) 682. There the Louisiana statute, challenged as an unlawful delegation of legislative power, made it a crime to introduce into or upon the grounds of any correctional or penal institution certain articles declared by the statute to be contraband, *"except through regular channels as authorized by the officer in charge"* of such institution. (Italics added.) The court, citing the "modern tendency to be more liberal in permitting grants of discretion to administrative boards or officers in order to facilitate the administration of laws as the complexity of economic and governmental conditions increases", 11 Am. Jur., Constitu-

tional Law, Section 234, at page 949, upheld the statute as a proper delegation of discretionary administrative authority in furtherance of the legislative purpose.

In *United States v. Ruckman* (D.C.W. Va. 1959), 169 F. Supp. 160, similar attack was made upon the Federal statute, 18 U. S. C. A. § 1791, which provided that "whoever, contrary to any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution or takes or attempts to take or send therefrom anything whatsoever, shall be imprisoned not more than ten years", under which statute the Attorney General had promulgated a regulation reading:

"The introduction or attempt to introduce into or upon the grounds of any Federal penal or correctional institution or the taking or attempt to take or send therefrom anything whatsoever without the knowledge and consent of the Warden or Superintendent of such Federal penal or correctional institution is prohibited."

Holding the statute constitutional and the regulation issued pursuant thereto a reasonable one to enable the men in charge of the penal institutions to know what was coming into or going out of their prisons, the court quoted from *United States v. Grimaud* (1910), 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563, as follows:

"That 'Congress cannot delegate legislative power is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution." *Marshall Field & Co. v. Clark,* 143 U. S. [649] 692, 12 S. Ct. 495, 36 L. Ed. 294. But the authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense."

Applying the foregoing principles to the situation here, we are of opinion that the Act in question giving to the

Director of Prisons authority to determine what things should and what things should not be permitted to be furnished to the prisoners in his charge was not a delegation to him of legislative power, did not vest him with arbitrary discretion, and was a proper delegation to him of the power, in the exercise of a reasonable discretion, to make administrative regulations in that regard appropriate to effectuate the legislative purpose, which in essence was and is the maintenance of a modern prison system with humane treatment of prisoners, attention to their welfare, and assistance toward their rehabilitation.

We are not unmindful of the rule that in passing upon the constitutionality of a statute challenged upon the ground that it delegates legislative power to an administrative officer the issue is to be decided not upon the assumption that the officer will use sound judgment in exercising the unregulated discretion with which the statute has invested him, but upon consideration of what things the statute affirmatively permits him to do. *South Carolina State Highway Department v. Harbin, supra.* But that rule, too, must be interpreted in the light of the situation to which the statute is directed; in our opinion it does not require that the statute here under consideration be stricken down as unconstitutional. As we have before stated, the power delegated to the Director is in our opinion not legislative, but administrative; determination from time to time of what things should be forbidden to be furnished to the prisoners was a matter properly entrusted to his discretion, in the exercise of which he is limited, by the declared legislative intent, to prohibiting those things to be furnished to prisoners which may reasonably be considered detrimental to their welfare or to the proper operation of the prison.

While the courts may not substitute judicial discretion for administrative discretion, and therefore as a general rule will not attempt to interfere with the exercise of discretionary power by a governmental agency,

capricious or arbitrary exercise of administrative discretion is of course subject to judicial review. *South Carolina Electric & Gas Co. v. South Carolina Public Service Authority,* 215 S. C. 193, 54 S. E. (2d) 777; *Griggs v. Hodge,* 229 S. C. 245, 92 S. E. (2d) 654; *Board of Bank Control v. Thomason,* 236 S. C. 158, 113 S. E. (2d) 544. In the instant, case we need not determine whether the regulation banning amphetamine was capricious or arbitrary, since appellants do not ask relief upon that ground; but it may not be amiss to note that long prior to the enactment of the statute here challenged the legislature itself declared it unlawful for any person to "sell, give away, barter, exchange, distribute or possess * * * except on a prescription of a duly licensed physician, dentist or veterinarian * * * amphetamine (benzedrine) or any compound thereof, except that amphetamine (benzedrine) in inhalers may be sold without prescription if * * * denatured so as to make it unfit for internal use." Code 1952, Section 56-1313(3).

The second ground of appeal is likewise without merit, in our opinion. Section 1-11, requiring regulations to be certified and filed with the Secretary of State, is a general law; the Act of May 24, 1960 (Code Supplement, Section 55-14), prescribing the manner in which the regulation here involved shall be published by the Director of Prisons, is a later and special law. The latter must prevail where there is conflict between them. *Gregory v. Rollins,* 230 S. C. 269, 95 S. E. (2d) 487.

Affirmed.

TAYLOR, C. J., and Moss and LEWIS, JJ., concur.

BUSSEY, Justice. (dissenting).

It is with reluctance and regret that I dissent in this case, but I am firmly convinced that the statutory provision under attack here is clearly an unconstitutional delegation of legislative power. With all due respect to the majority opinion, I am unconvinced that the authorities therein cited support the conclusions and the result reached.

The case of *South Carolina Highway Department v. Harbin*, 226 S. C. 585, 86 S. E. (2d) 466, strongly and clearly indicates to my mind that the decision of the lower court herein should be reversed. The opinion in that case contains an excellent discussion of the constitutional principles which are here applicable. As there pointed out, while the legislature may not delegate its power to make laws, in enacting a law complete in itself it may authorize an administrative agency or board "to fill in the details" by prescribing rules and regulations for the complete operation and enforcement of the law within its express general purposes.

That decision, however, recognizes and points out with clarity certain basic principles which must govern a decision as to whether a statutory provision is an unconstitutional delegation of legislative power. Cardinal principles involved are:

1. In order for the delegation of power to be held constitutional:

a. The law must be complete in itself with only details to be filled in by the administrative agency;

b. A statute must declare legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform with a proper regard for the protection of the public interest and with such degree of certainty as the nature of the case permits.

2. That the court should take into consideration the things which the act affirmatively permits and not what action an administrative officer may or may not take, and the presumption that an officer will not act arbitrarily but will exercise sound judgment and good faith cannot sustain a delegation of unregulated discretion.

In recognition of these cardinal principles this court held that a statutory provision which gave to the Highway Department the broad authority to suspend or revoke a driver's license for any cause it deemed satisfactory was an uncon-

stitutional delegation of legislative power. If the legislature could not delegate to the Highway Department the discretionary power to revoke a license to operate a motor vehicle, which is not a property right but a mere privilege, it seems abundantly clear to me that the legislature cannot constitutionally delegate to the director of the prison system the discretionary power to determine what course of conduct may subject one to a felony conviction and imprisonment for as much as ten years.

As pointed out in the majority opinion, Section 55-14 of the 1952 Code of Laws, here involved, was Section 17 of the Act of May 24, 1960 (51 Stat. at L. 1917) which established a Department of Corrections. Section 1 of that Act sets forth the legislative policy, a part of that policy being as follows:

"that those * * * sentenced to a term in the State Penitentiary shall have humane treatment, and be given opportunity, encouragement and training in the matter of reformation."

That is the only statement of policy contained in the entire Act which has any possible bearing on the section under discussion. Various sections of the Act spell out in detail the powers and duties of, and establish primary standards to be followed by, the director of the prison system with respect to other matters. But, with respect to the above quoted policy statement, the only further reference thereto contained in the Act is set forth in Section 10, in the following language:

"The Director, *with the consent of the State Board of Corrections,* shall have power to prescribe reasonable rules and regulations governing the humane treatment, training and discipline of prisoners." (Emphasis added.)

Thus, it is seen that with respect to the humane treatment, training, etc. of the prisoners, the director has the power to prescribe reasonable rules and regulations only with the consent of the Board of Corrections, but, as it

seems to me, rather anomalously, when it comes to a matter involving the public at large, and the determination of what persons are guilty of a felony and subject to punishment by ten years imprisonment, the director, by the terms of Section 17 (Code Sec. 55-14) is not even required to be reasonable; nor does he have to have even the consent of the State Board of Corrections.

Nowhere in the Act is the word "contraband" defined, and within the four corners of the Act there is a total absence of any standards to govern the director in the exercise of his untrammeled discretion. The language of the statute strips even the word "contraband" of any usual, legal connotation as it only makes it unlawful to furnish "matter declared by the director to be contraband."

By way of comparison, the motor vehicle license act under attack in the *Harbin case, supra,* contained a great deal more in the way of standards for the guidance of the Highway Department in the exercise of the discretionary power attempted to be granted to it than does the Act here.

In my view, the *Harbin case* is here controlling, but if we needed to consult persuasive authority, I do not think that the cases of *State v. Morgan* (La. 1959), 238 La. 829, 116 So. (2d) 682, and *U. S. v. Ruckman* (D. C. W. Va. 1959), 169 F. Supp. 160, cited in the majority opinion, actually support the result reached. I consider that both of those cases are clearly distinguishable by the language of the statutes involved. The Louisiana statute in the *Morgan case* named the articles which were declared to be contraband and made it a crime to introduce the named articles "except through regular channels as authorized by the officer in charge" (LSA-R.S. 14:402) of such institutions. The opinion of the court in that case clearly recognized the distinction in the following language:

"The act itself prohibits the introduction and removal of contraband in all cases except where it is done through regular channels and with authority of the officer in charge. If

the authority of the officer is granted there is no crime. If the authority is not granted, the legislature itself has made the act a crime."

Likewise, the basis of the decision of the court in *U. S. v. Ruckman, supra,* is concisely stated in the following quotation therefrom:

"Congress laid down the broad policy which prohibits the attempt to introduce anything into prisons, and then authorized the executive officer in charge of prisons to exercise a certain amount of discretion within the limits of that policy."

In brief, the gravamen of the crime in both the Louisiana statute and the Federal statute is clearly embraced and specified within the terms of the respective statutes. In the case of the Louisiana statute, the gravamen of the crime was the introduction of any one of certain named things without permission, and under the Federal statute, the gravamen of the crime is the introduction of any thing unless permitted under the rules and regulations of the executive officer in charge of prisons.

Quite to the contrary, under the statute here involved, the gravamen of the crime is not created by the legislature and cannot be ascertained by reading the statute. The actual crime is created by the decisions of the director in his untrammeled discretion. The public at large can determine the crime attempted to be created only by consulting the director or his list, which conceivably could change from day to day or week to week.

With reference to the quotations in the majority opinion from 11 Am. Jur., Constitutional Law, Section 234, pages 948 and 949, I do not consider these quotations to be here applicable, and I regard the reading of the entire section to be indicative of their inapplicability. Immediately following the first quotation contained in the majority opinion is the following sentence: "This rule and various applications and modifications arise most often in those cases dealing with licenses." Following the second quotation and in the foot-

notes in connection therewith, reference is made to cases involving a tax statute; a statute fixing units of weight for loaves of bread; and cases involving "blue sky laws" and the powers granted thereunder to security commissioners.

Much more apropos of the situation here is the following quotation from 42 Am. Jur., Public Administrative Law, Sec. 45, page 342:

"Range of Discretion; Standards—It is a fundamental principle of our system of government that the rights of men are to be determined by the law itself, and not by the let or leave of administrative officers or bureaus. This principle ought not to be surrendered for convenience, or in effect nullified for the sake of expediency."

In conclusion, it appears to me that the statutory provision here under attack is not complete law in itself, and lays down no primary standards for carrying it out. We are not here concerned with the exercise of sound judgment by the director, but are concerned with the fact that the act affirmatively leaves the determination of the gravamen of the crime to the sole, unregulated discretion of the director.

No good reason appears why the legislature in attempting to create a crime of such gravity could not have either named the articles declared to be contraband, or at least laid down a definite or comprehensive rule by which the determination of contraband articles could be made. We are not here dealing with any complex tax, financial or economic problem, or a matter of granting licenses, where it is either difficult or impractical for the legislature to lay down a definite or comprehensive rule to be followed by the administrative agency or officer.