## 20460

Jesse C. JOHNSON, Fire Marshal of the State of South Carolina, Appellant, v. Melvin L. ROBERTS, Respondent.

(236 S. E. (2d) 737)

120

*Daniel R. McLeod, Atty. Gen., Edward B. Latimer,*
*Joseph R. Barker,* and *Ronald H. Colvin, Asst. Attys. Gen.,*
of Columbia, *for Appellant,*

*Robert R. Carpenter, of Roddey, Sumalt and Carpenter,* and *Emil W. Wald, of Spencer and Spencer,* Rock Hill, and *Levy S. Alford,* of York, *for Respondent,*

June 29, 1977.

LEWIS, Chief Justice.

Appellant, State Fire Marshal, brought this action to restrain respondent from operating self-service gasoline stations unless a qualified attendant was on duty whenever the stations were open to the public, as required by the Fire Prevention Code, particularly Sections 16.74 and 16.75 (f) (i), (Volume 17, 1975 Cum. Supp., pp. 159, 161, and 162, Code of Laws). The lower court denied the relief sought upon the ground that the provisions of the Fire Prevention Code relied upon were unlawful; and this appeal is from that decision.

While subsidiary questions are involved, the basic issue to be decided is whether the promulgation of the pertinent provisions of the Fire Prevention Code by the State Fire Marshal constituted an unlawful exercise of legislative authority. The violation of the regulations in question by respondent is admitted.

The General Assembly created the office of the State Fire Marshal and placed upon him certain duties and responsibilities with reference to fire prevention. Section 37-80 of the 1962 Code of Laws, as amended. The general duties of the State Fire Marshal are set forth in Code Section 37-81 as follows:

It shall be the duty of the State Fire Marshal to enforce all laws and ordinances of the State, and the several counties, cities, and political subdivisions thereof, with reference to the following:

(a) The prevention of fires;

(b) The storage, sale and use of combustibles and explosives;

(c) The installation and maintenance of automatic or other fire alarm systems and fire extinguishing equipment;

(d) The construction, maintenance and regulation of fire escapes;

(e) The means and adequacy of exits, in case of fire, from factories . . . and all other places in which numbers of persons work, live or congregate . . .;

(f) Investigation of the cause, origin and circumstances of fire.

The foregoing general authority of the State Fire Marshal in fire prevention to protect life and property was further defined in Code Section 37-82.1 and the authority to promulgate rules and regulations for the enforcement of the statutory safety requirements was granted in Code Section 37-82.7, as follows:

37-82.1.   The State Fire Marshal shall require conformance with minimum fire prevention and protection standards, based upon nationally recognized standards, as may be set forth by regulation issued by the State Fire Marshal for the prevention of fire and for the protetcion of life and property.

37-82.7.   The State Fire Marshal shall see that the provisions of this article are faithfully executed, and to that end he may make rules and regulations to carry out the provisions of this article.

The Fire Marshal, acting under the foregoing statutory authorization to prevent fires and protect life, adopted the Fire Prevention Code recommended by the American Insurance Association, which was filed in the office of the Secretary of State as required by Code Section 1-11, as amended. The Fire Prevention Code requires that each gasoline service station in this State shall have an attendant on

duty whenever the station is open to the public for business. The pertinent sections provide:

Section 16.74. Each service station open to the public shall have an attendant or supervisor on duty whenever the station is open for business.

Section 16.75. Dispensing Systems.

F. Special Type Dispensers.

(1) Approved special dispensing devices such as, but not limited to, coin-operated, cord-operated, and remote preset types are permitted at service stations, provided there is at least one qualified attendant on duty while the station is open to the public. The attendant's primary function shall be to supervise, observe and control the dispensing of Class I liquids while said liquids are being dispensed. It shall be the responsibility of the attendant to prevent the dispensing of Class I liquids into portable containers not in compliance with Section 16-73e, control sources of ignition, and to immediately handle accidental spills and fire extinguishers if needed.

(2) The attendant or supervisor on duty shall be capable of performing the functions and assuming the responsibilities covered in Section 16.75 (f) (i)

The question of whether the adoption of the foregoing provisions of the Fire Prevention Code constituted an unlawful exercise of legislative authority involves, first, a determination of whether Code Section 37-82.1 is an unconstitutional delegation of legislative power to the Fire Marshal and, second, if a lawful delegation, whether the Fire Marshal exceeded the authority granted him by adopting these particular provisions.

The general principles governing the limitations upon the authority of the Legislature to delegate legislative power were stated in *South Carolina State Highway Department v. Harbin, 226 S. C. 585, 86 S. E. (2d) 466*, as follows:

"It is well settled 'that while the legislature may not delegate its power to make laws, in enacting a law complete in itself, it may authorize an administratve agency or board 'to fill up the details' by prescribing rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. (citing cases). 'However, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the adminstrative officer or body must conform, with a proper regard for the protection of the public interests and with such degree of certainty as the nature of the case permits, and enjoin a procedure under which, by appeal or otherwise, both public interests and private rights shall have due consideratiation." *State v. Stoddard,* 126 Conn. 623, 13 A. (2d) 586, 588.

The first question then becomes whether Section 37-82.1 is "a law complete in itself," laying down a legislative policy and primary standards, to 'which the Fire Marshal must conform. As the court stated in *Cole v. Manning,* 240 S. C. 260, 125 S. E. (2d) 621, the answer is a difficult one:

"A difficulty that confronts the court when a delegated power is challenged lies not in the foundation of principles that should govern the decision, but in their application to the facts and circumstances of the particular case at hand. For it is apparent, from consideration of the numerous cases on the subject, that the degree of authority that may lawfully be delegated to an administrative agency must in large measure depend upon such circumstances, including the legislative policy as declared in the statute, the objective to be accomplished, and the nature of the agency's field of operation."

The purpose for which the Fire Marshal may promulgate regulations under Section 37-82.1 is "for the prevention of fire and for the protection of life and property." The primary standard set by the statute to govern the Fire Marshal in adopting regulations is that he shall "require conformance

with minimum fire prevention and protection standards, based upon nationally recognized standards."

The statute authorizes the adoption of regulations governing the broad field of fire prevention. The question is whether the requirement, that the regulations adopted be minimum fire prevention standards "based upon nationally recognized standards," constitutes such a limitation on the discretionary authority of the Fire Marshal as to make the delegation constitutional.

The statute does not define the term "nationally recognized" and, under settled principles, the words used will be given their usual and generally accepted meaning. The word "nationally" means with regard to, affecting, or involving a nation as a whole. Webster's Third International Dictionary; Black's Law Dictionary, 4th ed. The phrase "nationally recognized standards," then, means standards recognized or adopted in at least a majority of the States. The discretion of the Fire Marshal in adopting regulations is so limited. In other words, he is prohibited from adopting a regulation unless it sets forth a fire prevention rule to which people in a majority of the States of the United States are required to comply.

We think the foregoing interpretation of "nationally recognized" gives effect to its reasonable meaning and sets an intelligible standard to which the Fire Marshal must conform. The authority granted under Section 37-82.1 to adopt regulations is, accordingly, not an unconstitutional delegation of legislative power.

We next consider whether the adoption by the Fire Marshal of the particular regulations exceeded the authority granted to him by the statute.

The statute (Section 37-82.1) directs that any regulations adopted by the Fire Marshal shall require conformance with *minimum* fire prevention and protection standards. The Fire Prevention Code states that "it is the intent of this Code to prescribe regulations consistent

with nationally recognized *good practice* for the safeguarding to a reasonable degree of life and property from the hazards of fire and explosion." (Emphasis added). It is argued that, since the Fire Prevention Code states that it is intended to prescribe regulations consistent with nationally recognized "good practice," it attempts to prescribe a different and higher requirement than "minimum standards" referred to in the statute.

There is no merit in the foregoing argument. The use of the words "nationally recognized good practice for the safeguarding to a reasonable degree of life and property" in the Fire Prevention Code is not inconsistent with the statutory requirement that the regulations conform to *nationally recognized minimum standards* for the prevention of fire. The record shows that it was the intent of the Fire Prevention Code to conform to national *minimum* standards.

It remains to be determined whether Sections 16.74 and 16.75(f) of the Fire Prevention Code constitute minimum fire prevention standards which are nationally recognized. According to a survey made by the Fire Marshal, the regulations requiring an attendant at self-service gasoline stations were in effect in at least twenty-seven (27) states. The regulations in question, therefore, conform to nationally recognized minimum standards as required by Section 37-82.1.

The regulations are further challenged upon the ground that requiring an attendant is beyond the enforcement powers of the Fire Marshal and, therefore, the promulgation of such regulation exceeded his statutory authority. The enforcement powers of the Fire Marshal are set forth in Code Section 37-82.2. This section provides that whenever he finds that any building or other structure which is especially liable to fire and is so situated as to endanger lives or other property, "or is deficient in fire or life protection," an order shall be issued directing the "defect to be removed or remedied." It is argued that the enforcement powers of the Fire

Marshal are thus limited to requiring *defects* in "any building or other structure" remedied and that the failure to provide an attendant or personnel at the station does not constitute such a defect. It is apparent that no such restricted meaning was intended.

The statute directs that an order be issued requiring the *defect* to be remedied whenever the Fire Marshal finds that any building or other structure is especially liable to fire "or is deficient in fire or life protection." The term *defect,* as used in the statute, clearly embraces a deficiency in fire or life protection whether caused from the structural condition of the building or the failure to maintain required personnel or other safety measures. The regulation requiring an attendant was, therefore, not beyond the enforcement powers granted by the statute.

We find no merit in the further contention that the term "qualified attendant" is so vague that the provisions of the regulation violate respondent's right to due process of law. The regulations require that there be a "qualified attendant" on duty while the service station is open for business; and that his duties are to "supervise, observe and control the dispensing of Class I liquids."

The term "qualified attendant" is not vague and indefinite. The word *qualified* means that the attendant has to be capable and competent to perform the duties specified. A person of common intelligence, we think, would be able to determine without difficulty whether an attendant was competent to supervise, observe and control the dispensing of gasoline at a service station.

It is also charged that the Fire Marshal has engaged in discriminatory enforcement of the present regulations by attempting to enjoin respondent's operations while failing to take any action against self-service gasoline operations conducted in connection with convenience stores. Such action of the Fire Marshal is termed an arbitrary classification,

depriving respondent of his constitutional rights to due process and equal protection of the law.

The record fails to support the charge of discriminatory classification and enforcement with respect to respondent's business operations. The basis for distinguishing between respondent's self-service business and that of the mentioned convenience stores is evident the latter maintains an attendant while the business is open to the public and, according to the testimony of the Fire Marshal, the failure of this attendant to supervise the dispensing of gasoline would constitute a violation of the regulation. We fail to find evidence of discriminatory enforcement such as to deny respondent equal protecton or due process of law.

Respondent further contends that the authority of the Fire Marshal to adopt the regulation in question has been preempted by the Federal Occupational Safety and Health Act. This law was enacted to insure the safe and healthful working conditions of American workers and established a regulatory scheme applicable to employees and businesses affecting interstate commerce. 29 U. S. C. § 655.

While at one time Federal regulations, adopted pursuant to the Occupational Safety and Health Act, required an attendant on duty at self-service gasoline stations, that regulation was deleted on March 15, 1974 and is no longer a Federal requirement.

There is, therefore, no Federal law dealing with the requirement of an attendant at a self-service gasoline station and consequently no question of Federal preemption of the regulation involved in this case. In fact, the Federal Statute states (29 U. S. C. § 667) :

Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under Section 655 of this title.

Gasoline is a highly flammable liquid which can be extremely dangerous, and its sale to the public under careful supervision and enforcement of proper safety practices by competent personnel is reasonably related to the public health, safety, and welfare. The regulation that an attendant be on duty when gasoline is being dispensed is, under this record, a reasonable requirement for the prevention of the loss of life and property and, as such, is a proper exercise of the police power. If any change in the regulation is desired, it must be either by regulation of the Fire Marshal or by legislative action. The court has no right to make such change.

Since the regulations, here involved and to which this opinion is confined, were promulgated pursuant to constitutional statutory authority, they have the force and effect of law. *Mace v. Berry,* 225 S. C. 160, 81 S. E. (2d) 276.

Reversed and remanded for further proceedings consistent with the foregoing views.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.