FEDERAL DEPOSIT INSURANCE CORPORATION, Appellees,

v.

AMERICAN BANK TRUST SHARES, INC. (ABTS); Howard H. Lamar; H. Ciremba Amick; William F. Lambert; Harry L. Parker; Banks H. Good; Augustus T. Allen; Douglas R. Bryant; Robert B. Fickling; Dr. James H. Vallentine; Marshall B. Williams; J. W. Wall, Jr.; Albert E. Odum; William H. Greer; Luther H. Adden; Carl Joe Taylor; individually and as a shareholder of ABTS, suing on behalf of himself and all other shareholders of said corporation, and for the benefit of said corporation's subsidiary company, American Bank & Trust; and Sadie G. Schein, individually and suing on behalf of all other capital note holders of American Bank & Trust, Appellees,

and

Sidney Robinson Bagby, Dr. O. J. Ryan; A. G. Dwyer; Estate of Dr. C. P. Ryan, Sr., by its Executor Dr. C. P. Ryan, Jr.; J. E. Smith; G. J. Getsinger; Weldon E. Wall; Catherine H. Hightower; R. P. Preacher; H. Kleigh Purdy, Jr.; Dr. T. B. Carroll, Jr.; Harold Wall; A. G. Martin; J. Glenn Jarrell; J. W. Wall, Sr.; F. A. Nimmer, Jr., suing derivatively on behalf of American Bank Trust Shares, Inc., (ABTS), and on behalf of themselves and as representatives of a class of persons certified by the United States District Court for South Carolina as all persons, other than* American Mortgage Corporation; H. Ciremba Amick; Forrest K. Abbott; Luther H. Adden, Jr.; Augustus T. Allen; Douglas R. Bryant, Sr.; Robert B. Fickling; Banks H. Good; James H. Gressette; Dick Gregg McTeer; Jack G. Vallentine; Marshall B. Williams; Howard H. Lamar, Jr.; William F. Lambert; Harry L. Parker; Grady Wade; J. W. Wall; Rich-

ard Greer; William H. Southworth; Edward Bagwell; Edward Linsey; Lloyd Hendrix; Albert Odum; J. B. Perry; Keith B. Belser; Jimmy L. Marden; Scott W. Waldron; William B. Moore; Ted O. McGee; Carl Joe Taylor; F. L. Roebuck; R. D. Roebuck; First Provident Corporation of South Carolina; Paul Thomas; Sunburst Development Company, Inc.; and Trippett Boineau who, on September 20, 1974, owned common stock in American Bank Trust Shares, Inc., Appellants.

No. 79–1013.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1979.

Decided Aug. 14, 1980.

W. Eugene Rutledge, Anniston, Ala. (Rutledge, Williams, Williams & Norton, Anniston, Ala., Pritchard, Myers, Morrison, Bloom & Rutledge, Charleston, S.C., on brief), for appellants.

J. Randolph Pelzer (Pelzer & Associates, North Charleston, S.C., Charles H. Gibbs, Sinkler, Gibbs & Simons, Charleston, S.C., Federal Deposit Ins. Corp. on brief), for appellees.

Before HAYNSWORTH, Chief Judge, SPROUSE, Circuit Judge, and HOFFMAN *, Senior District Judge.

HAYNSWORTH, Chief Judge:

This case arises out of the failure of American Bank and Trust Company, a

---

* "other than" applies to *all* parties that follow.

* Honorable Walter E. Hoffman, Senior District Judge of the United States District Court for the Eastern District of Virginia, sitting by designation.

branch bank chartered under the laws of the State of South Carolina. The contest is primarily between the Federal Deposit Insurance Corporation, the receiver of the bank and transferee of some of its assets, and a group of shareholders of the holding company which owned the bank's stock. Each side seeks the exclusive right to maintain and control lawsuits against former officers and directors of the bank. The position of the shareholders is founded upon an attack on the validity of the appointment of FDIC as receiver and the transfer to it of those assets of the bank which had not been sold to Southern Bank and Trust Company.

The district court granted summary judgment for FDIC, but stayed consideration of the counterclaim of the shareholders challenging FDIC's capacity to act.[1] We vacated that judgment and remanded the case for consideration of the shareholders' counterclaim.[2]

There was a trial, after which the district judge rejected the challenge by the shareholders, on constitutional and other grounds, to the appointment of FDIC as receiver and the transfer of bank assets to it.[3]

We affirm.

American Bank & Trust Company began to experience liquidity problems in the early 1970's. Conditions became serious during the summer and early fall of 1974. Though it had obtained a $10,000,000 loan from another bank, on August 29, 1974, AB&T notified the Federal Reserve Bank that it would be unable to open its doors on the Tuesday after Labor Day without further assistance from the Federal Reserve Bank. That assistance was refused, but the FDIC, which insured AB&T's deposits, offered short–term assistance. It made daily allowances to AB&T, for which it received AB&T's demand notes. This provided some additional time within which officials of

AB&T might seek a merger with another bank having more liquid resources. As the situation worsened, however, FDIC sought bid packages from other banks in South Carolina pursuant to which a purchasing bank would acquire the liquid assets and bank facilities of AB&T and assume the liabilities to the depositors.

There was a meeting between the President of AB&T and FDIC officials on September 20, 1974. The FDIC officials took the position that action to collect the demand notes would not be further delayed unless the bank could obtain assistance from the Federal Reserve Bank, but that assistance was refused. The demand notes of FDIC were presented for payment, which AB&T was unable to make. Later that afternoon, the South Carolina Board of Bank Control convened. It ordered the closure of AB&T and appointed FDIC as its receiver. FDIC then executed a purchase and assumption agreement with Southern Bank & Trust Company, the highest bidder upon FDIC's solicitation for bids from other banks in South Carolina. Those assets not purchased by Southern, FDIC, as receiver, transferred to itself in its corporate capacity under an agreement that it would collect and liquidate those assets, apply the proceeds to expenses and charges and to payment of its demand notes and advances and other obligations of AB&T and distribute among the shareholders any excess that remained after payment of those obligations.

Later that evening, counsel for FDIC appeared before a judge of the state Court of Common Pleas and obtained an ex parte order confirming and approving the appointment of FDIC as receiver and the sale of assets to Southern and to FDIC.

AB&T[4] was given no formal notice of the meeting of the Board of Bank Control or of the proceeding in the Court of Common Pleas. It had no representative present at either proceeding. This gives rise to the

1. *Federal Deposit Ins. Corp. v. American Bank Trust Shares*, 412 F.Supp. 302 (D.S.C.1976).

2. *Federal Deposit Ins. Corp. v. American Bank Trust Shares*, 558 F.2d 711 (4th Cir. 1977).

3. *Federal Deposit Ins. Corp. v. American Bank Trust Shares*, 460 F.Supp. 549 (D.S.C.1978).

4. References to AB&T are intended to include the bank and its holding company.

shareholders' claim of lack of due process in the appointment of FDIC as receiver and in the transfer of assets to it.

■ The South Carolina statutes do not require notice of an adversary hearing before the Board of Bank Control or in the court,[5] nor does *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), require such notice and hearing. The Supreme Court there recognized that there are certain "extraordinary situations" in which preseizure notice and hearing are not required. It mentioned that bank failure is one of such extraordinary situations, as the Supreme Court has expressly held. *Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); *Coffin Bros. v. Bennett*, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed.2d 768 (1928); *Title Guaranty Co. v. Allen*, 240 U.S. 136, 36 S.Ct. 345, 60 L.Ed. 566 (1916). When a bank becomes unable to meet its obligations, prompt action is a compelling necessity for the maintenance of public confidence, for the preservation of the institution's value as a going concern and for the prevention of runs on the bank.

We are asked to hold that whatever the typical situation and the general rule, the circumstances here were not "extraordinary." But, of course, they were. The demand notes were in default; the bank could not continue in business without further infusions of cash, and sources of such infusions were exhausted. Moreover, the rule must be one upon which public officials, in the interest of others, can act with certainty and confidence. The legality and validity of the action must not depend upon a later determination of the urgency of the conditions the actors faced. When a bank can no longer meet its obligations, it is not for judges to speculate that it might have appeared to have been a viable financial institution for one day or a few days longer.

■ The shareholders next contend that though due process does not require any notice and hearing in advance of closure of the bank, the statutes are constitutionally infirm in their failure to provide for prompt post–seizure notice and hearing. Of course, there was prompt notice to AB&T of what had been done, but FDIC appears to agree that the availability of some post–seizure hearing was requisite.[6] There was such availability, and the fact that no post–seizure hearing was held is rather obviously because there was no basis upon which the action of the Board of Bank Control or the judge could be contested.

In *Dunlap & Dunlap v. Zimmerman*, 188 S.C. 322, 199 S.E. 296 (S.C.1938), the South Carolina Supreme Court held that orders of the Board of Bank Control were reviewable in the Court of Common Pleas. The Board had set a fee to be paid to an attorney by the conservator of an insolvent bank. Thereafter, in response to a general creditors bill, filed in the Court of Common Pleas by the conservator, the lawyer petitioned for the allowance of a fee in a larger amount. The judge of the Court of Com-

---

5. The relevant statutes in effect at the time the bank was closed were reenacted without material change in 1976. Section 34 3–630, formerly § 8 273, Code of Laws of South Carolina, provides that FDIC may be appointed receiver of any institution for which it insures funds and which has been closed because of inability to meet demands of its depositors. The appointment must be approved by the Board of Bank Control. Section 34–3–640, formerly § 8–274, provides that upon acceptance of appointment as receiver FDIC shall acquire title to all assets of the closed institution. Consent of the Commissioner of Banking is required. Section 34 3 660, formerly § 8–276, provides inter alia, that the receiver may sell assets to FDIC, in its corporate capacity. Consent of the Commissioner of Banking and a court order are re-

quired. These consents and approvals were obtained.

6. Because we hold that AB&T in fact was provided with opportunities for judicial review, we need not address the question which would be presented if no post–closing hearing were allowed. There is authority, however, for the proposition that no hearing whatever is required under the federal statutes allowing the Comptroller of the Currency to make a finding of insolvency and appoint a receiver and permitting the sale of assets by the receiver upon court order. *In re Franklin National Bank*, 381 F.Supp. 1390 (E.D.N.Y.1974). Because South Carolina banking laws are patterned after the federal statutes, *Zimmerman v. Central Union Bank*, 194 S.C. 518, 8 S.E.2d 359 (1940), it is at least arguable that no hearing is required here.

mon Pleas assumed jurisdiction of the controversy and ordered the payment of a larger fee. On appeal, the South Carolina Supreme Court held that the Court of Common Pleas had jurisdiction to review the decision of the Board of Bank Control for an abuse of its discretion.

The lawyer's petition came in indirect fashion to the Court of Common Pleas, but there is no basis for a distinction between a petition for judicial review in response to a creditors bill and a direct petition for judicial review. The South Carolina Supreme Court has made it quite clear that administrative and quasi–judicial decisions by the state's boards and commissions are subject to judicial review, notwithstanding the absence of legislative provision for it. *Cole v. Manning*, 240 S.C. 260, 125 S.E.2d 621, 625 (1962); *Jacoby v. South Carolina State Bd. of Nat. Exam.*, 219 S.C. 66, 64 S.E.2d 138, 148–49 (1951); *Feldman v. South Carolina Tax Commission*, 203 S.C. 49, 26 S.E.2d 22, 23, 24 (1943). The scope of such review is narrow, but the reviewing court has jurisdiction to determine whether the Board's action was contrary to law and whether any exercise of its discretion was arbitrary or capricious. Such judicial review of the action of the Board of Bank Control was available to AB&T in this case.

The order of the Court of Common Pleas approving and confirming the appointment of FDIC as receiver and the sale of the assets was also reviewable. The ex parte order, itself, provided that the cause was to remain open before the Court of Common Pleas for such other relief as may be equitable. AB&T could have sought and obtained reconsideration by that judge. Furthermore, the South Carolina Supreme Court has general appellate jurisdiction to review final orders of the Court of Common Pleas.[7] Indeed, the Supreme Court of South Carolina has express jurisdiction to review interlocutory orders "granting, continuing, modifying or refusing the appointment of a receiver * * *."[8]

Officials of AB&T were well aware, generally, of what was going to happen. After the orders were obtained, they received formal notice of the closing of the bank, the appointment of a receiver, and the sale of the assets, including the orders of the Board of Bank Control and the Court of Common Pleas. The availability of judicial review upon its application and of hearings, coupled with the notice that the bank actually received, satisfy any requirement of the due process clause in bank failure situations.

AFFIRMED.

---

7. Code of Laws of South Carolina, §§ 14 3 330(1), (2)(a).

8. Code of Laws of South Carolina, § 14-3 330(4).